**DOROTHY J., Individually and on Behalf of Brian B., Plaintiff–Appellant,**

v.

**LITTLE ROCK SCHOOL DISTRICT; Centers for Youth and Families; Bruce Limozaine, Individually and in his official capacity as former Administrator of Field Operations Management, Division of Children and Family Services, Dept.**

---

of Human Services; Corrine Means, Individually and in her official capacity as former coordinator on Substitute Care, Permanency Planning Unit, the Division of Children and Family Services, Dept. of Human Services; Nancy Marion, Individually and in her official capacity as former Social Service Worker II, Permanency Planning Unit, the Division of Children and Family Services, Dept. of Human Services; Barbara Keeton, Individually and in her official capacity as Social Service Worker II, Permanency Planning Unit, Division of Children and Family Services; Demetria Nesbitt, Individually and in her official capacity; Chris Jackson, Individually and in official capacity; John Breen, Individually and in his official capacity, Defendants–Appellees.

No. 92–2452.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1993.

Decided Oct. 13, 1993.

Willard Proctor, Jr., Little Rock, AR, argued for plaintiff-appellant.

Bruce Hurlbut, Stuart Miller, and Frederick Ursery of Little Rock, AR, argued for defendants-appellees.

LOKEN, Circuit Judge.

The mother of mentally retarded Brian B. commenced this action under 42 U.S.C. § 1983, alleging a due process violation when another mentally retarded student sexually assaulted Brian in the boys shower at Hall High School in Little Rock. Defendants are the Little Rock School District (LRSD) and two of its employees; the Centers for Youth and Families (the Centers), a private foster

1. The HONORABLE SUSAN WEBBER WRIGHT, United States District Judge for the

care agency, and one of its employees; and four employees of the Arkansas Department of Human Services (DHS). The district court[1] dismissed the complaint, concluding that defendants had no constitutional duty to protect Brian from this act of violence by a private party. *Dorothy J. v. Little Rock Sch. Dist.*, 794 F.Supp. 1405 (E.D.Ark.1992). We affirm.

**I.**

Plaintiff's seven-page complaint alleges that, "[o]n or about October 26, 1989, and October 27, 1989, while in class at Hall High School, another C.B.I. student, Louis C., sexually assaulted and raped Brian B." Louis C. was a mentally retarded ward of the State, placed in the custody of the Centers by DHS. Both Brian and Louis attended Hall High School as part of LRSD's Community–Based Instruction (CBI) Program, which seeks to teach life skills to educable mentally retarded students. Each defendant was aware that Louis had a history of violent and sexually assaultive behavior, but none took action sufficient to prevent Louis from attacking Brian in the school shower. Therefore, the complaint asserts, "Brian B. was deprived of his constitutional rights to personal integrity and security." We review the district court's Rule 12(b)(6) dismissal de novo, taking as true the factual allegations in the complaint.

**II.**

The Due Process Clause protects against state action ("[n]o State shall ... deprive any person of life, liberty, or property, without due process of law"). The person who assaulted Brian B. was a ward of the State of Arkansas. The district court concluded, *see* 794 F.Supp. at 1410, and plaintiff concedes on appeal, that Louis C. cannot be considered a state actor. Thus, plaintiff's due process claim is that defendants as state actors failed to protect Brian B. from assault by another private actor.

Eastern District of Arkansas.

In *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that, except in certain limited circumstances, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." 489 U.S. at 197, 109 S.Ct. at 1004. *DeShaney* expressly recognized only one exception to this rule: "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." 489 U.S. at 199–200, 109 S.Ct. at 1005. Plaintiff argues that her claim falls within the *DeShaney* exception because Brian B. was "in the care and functional custody of the school authorities." The district court held that there were no "'custodial' surroundings at Hall High School sufficiently analogous to a prison or prison-like environment to impose on the state an affirmative duty to protect Brian B. from Louis C." under *DeShaney*. 794 F.Supp. at 1416. We agree.

■ The due process analysis under *DeShaney* focuses upon the nature of the custodial relationship because, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." 489 U.S. at 200, 109 S.Ct. at 1005–06. A *constitutional* duty of care arises only "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Id.*

In *J.O. v. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir.1990), the Seventh Circuit held that "the government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to

protect arises." Likewise, in *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1369–73 (3d Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993), where female students were sexually assaulted by male students in a unisex bathroom, the Third Circuit held that neither compulsory school attendance laws nor a school's *in loco parentis* status create the kind of custodial relationship that imposes a duty to protect under *DeShaney*. *See also Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 713–14 (3d Cir.1993) (no constitutional duty to protect students from a private school bus driver). In *Maldonado v. Josey*, 975 F.2d 727, 731–33 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993), the Tenth Circuit followed *Alton* and *Middle Bucks*.

■ We agree with *Alton, Middle Bucks,* and *Maldonado* that state-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect it owes to prison inmates, *see Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), or to the involuntarily institutionalized, *see Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).[2] Public school attendance does not render a child's guardians unable to care for the child's basic needs. In this regard, public schools are simply not analogous to prisons and mental institutions.

■■ Nor does Brian B.'s mental retardation alter the equation. There is no allegation that the State involuntarily placed Brian B. in the CBI program. Under *DeShaney*, it is "the State's affirmative act of restraining the individual's freedom to act on his own behalf," 489 U.S. at 200, 109 S.Ct. at 1006, not the individual's own limitations, that gives rise to the constitutional duty to protect. *See Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 992 (1st Cir. 1992); *Fialkowski v. Greenwich Home for*

2. Among the federal courts of appeals, after *DeShaney*, only a panel of the Fifth Circuit in dictum has taken a contrary view. *See Doe v. Taylor Ind. Sch. Dist.*, 975 F.2d 137, 145–47 (5th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1066, 122 L.Ed.2d 371 *reh'g en banc granted*, 987 F.2d 231 (5th Cir.1993). And *Doe* would impose liability only if school officials were deliberately indifferent to, or tacitly authorized, "a pattern of unconstitutional acts." *See* 975 F.2d at 144, 148. No such pattern is alleged in this case.

*Children, Inc.,* 921 F.2d 459, 465–66 (3d Cir. 1990).

### III.

Prior to *DeShaney,* this court had held that the Due Process Clause is implicated "when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have been in." *Wells v. Walker,* 852 F.2d 368, 370 (8th Cir. 1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). We have recently held that this is a second exception to *DeShaney's* general rule that the State has no duty to protect its citizens from private harmdoers. *See Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993). Plaintiff argues that defendants are subject to this constitutional duty of care because they affirmatively placed Louis C. in a program with vulnerable children knowing of Louis C.'s prior sexually violent behavior, and then failed to protect other students from such violence. This claim must be separately analyzed for the various defendants.

■ *The Centers and DHS.* Plaintiff's complaint alleges that DHS placed Louis C. with the Centers, the Centers enrolled Louis C. in the CBI program, and the DHS and Centers defendants "failed to take adequate precautions that others to whom Louis C would be exposed would be protected." The district court held that this allegation failed to state a claim because Louis C. was placed in the CBI program at least two years before the assault;[3] to be liable under § 1983 for creating a danger, "the state must be more directly implicated than it was here in the events causing the victim's injury." 794

F.Supp. at 1421, citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

■ In *Martinez,* a parolee committed murder five months after his release. The Supreme Court affirmed dismissal of the victim's § 1983 complaint, holding that "appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." 444 U.S. at 285, 100 S.Ct. at 559. Likewise, we agree that the assault on Brian B. is "too remote a consequence" of enrolling Louis C. in the CBI program two years earlier.[4] Plaintiff's general allegation that the Centers and DHS failed to make sure that LRSD would protect other students from Louis C.'s known assaultive behavior is the kind of "traditional tort law" claim that the Supreme Court has refused to translate into a due process deprivation. *See Collins v. City of Harker Heights,* —— U.S. ——, ——, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992) (failure to train and warn city employees to avoid dangers present in their work place not a due process deprivation). As the First Circuit recently observed in holding that *DeShaney* and *Collins* barred a § 1983 suit for injuries sustained when a mental health patient jumped out of a State-operated van:

> To hold that by negligently (or with "deliberate indifference") giving Monahan a ride in an insecure vehicle—thereby rendering him "more vulnerable" to a danger—the Commonwealth committed a constitutional violation, would convert most torts by state actors into constitutional violations.

---

**3.** The district court took this fact from the parties' Rule 12 motion briefs, rather than plaintiff's complaint. On appeal, plaintiff does not object to this statement of fact or to the district court's failure to convert defendants' Rule 12 motion to one for summary judgment under Rule 56. A failure to convert "is harmless if the nonmoving party had an adequate opportunity to respond to the motion [to dismiss] and material facts were neither disputed nor missing from the record." *Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir.1992). *See also Hollis v. United States Dept. of Army,* 856 F.2d 1541, 1544 (D.C.Cir.1988).

**4.** In most every circuit court decision imposing § 1983 liability because the State affirmatively created or enhanced a danger, "the immediate threat of harm has a limited range and duration," unlike the indefinite risk created by enrolling Louis C. in public school. *Reed v. Gardner,* 986 F.2d 1122, 1127 (7th Cir.1993) (arresting officers leaving drunk passenger in control of a motor vehicle).

*Monahan,* 961 F.2d at 993. *See also Middle Bucks,* 972 F.2d at 1376; *Wells,* 852 F.2d at 371–72.

We cannot agree with those who have suggested that one comment toward the end of the *DeShaney* opinion—"nor did [the State] do anything to render him any more vulnerable to [the risk of private violence]," 489 U.S. at 201, 109 S.Ct. at 1006—signals the Supreme Court's approval of § 1983 liability whenever a state actor has increased the risk of harm from private sources. Such a ruling would make § 1983 virtually coterminous with traditional tort law, the very expansion of constitutional tort liability that the Supreme Court has rejected in *Martinez, DeShaney, Collins,* and *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (prison inmates have no due process claim for the State's negligent creation of an unsafe condition).

■ *LRSD.* The LRSD defendants were not responsible for enrolling Louis C. in the CBI program, but plaintiff alleges that these defendants affirmatively created a danger when they "left the two [boys] alone unsupervised." However, that is just another way of saying that the school environment creates a custodial relationship giving rise to a constitutional duty to protect. Our rejection of plaintiff's custodial relationship theory means that *DeShaney*'s general rule—that the State's failure to protect against private violence does not violate the Due Process Clause—defeats this claim.

On appeal, plaintiff also contends for the first time that defendant Chris Jackson, an LRSD employee, suspected that Louis C. had assaulted Brian B. on October 26 and placed the boys in the shower together on October 27 "to confirm his suspicions." From the standpoint of the affirmatively-created-danger exception to *DeShaney*'s general rule, the significance of this additional fact allegation is obvious. Yet there is no trace of this assertion in the district court record—not in the complaint, which simply alleges that, "On or about October 26, 1989 and October 27, 1989 … Louis C., sexually assaulted and raped Brian B."; nor in plaintiff's separate responses to the various defendants' dismissal motions; nor in plaintiff's

motion to amend her complaint; nor in the district court's forty-three page opinion. The parties and the district court litigated this case to judgment under *DeShaney* and its progeny with no discernible cognizance of this potentially significant fact assertion.

■■ The bare allegation in the complaint that assaults occurred "[o]n or about October 26, 1989, and October 27, 1989," did not give defendants notice of a claim that one or more of the defendants affirmatively placed Brian B. in the shower with Louis C. the day after a suspected sexual assault. The parties' Rule 12 memoranda did not consider such a claim, and the district court was not required to "pretend that certain facts exist in order to foresee a theory of recovery not actually raised or reasonably inferred by the pleader." *Williams v. Willits,* 853 F.2d 586, 588 (8th Cir.1988). While complaints are to be liberally construed, "an attempt to amend one's pleadings in an appellate brief comes too late." *Hanson v. Town of Flower Mound,* 679 F.2d 497, 504 (5th Cir.1982). Therefore, we do not address the merits of this issue because we do not consider arguments raised for the first time on appeal. *See, e.g., Schuldt v. Mankato Ind. Sch. Dist. No. 77,* 937 F.2d 1357, 1363 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 937, 117 L.Ed.2d 108 (1992).

The judgment of the district court is affirmed.