**Willie YOUNG, as Next Friend of Jane Doe, a Minor**

v.

**AUSTIN INDEPENDENT SCHOOL DISTRICT.**

Civ. No. A–94–CA–615 JN.

United States District Court, W.D. Texas, Austin Division.

April 28, 1995.

D. Phillip Adkins, Law Office of D. Phillip Adkins, Austin, TX, for plaintiff.

William H. Bingham, McGinnis, Lochridge & Kilgore, Austin, TX, for defendant.

*ORDER AND JUDGMENT*

NOWLIN, District Judge.

Before the Court is Defendant's Motion for Summary Judgment filed on March 23, 1995. The Plaintiff filed a response to this Motion on April 18, 1995. After reviewing the Motion, the arguments of counsel, and the applicable law, the Court is of the opinion that the Motion for Summary Judgment should be granted.

## I. INTRODUCTION

The underlying facts in this case are undisputed.[1] While a student at a local high school, the minor Plaintiff was sexually assaulted by two fellow students in a girls' bathroom on Defendant's property during school hours. The alleged perpetrators of this act had just recently been enrolled in the school. They had histories of disruptive or abusive behavior, and one of the students had just been released from the Texas Youth Commission after a two year period of incarceration.

Plaintiff filed this civil rights action under Title 42 U.S.C. § 1983 alleging that the Defendant's official policies and customs reflect deliberate indifference to the constitutional rights of students in the Austin Independent School District (AISD). Plaintiff claims that AISD's policy of allowing abusive or violent individuals to be a part of the general student population reveals deliberate indifference to the other students' substantive due process right to bodily integrity.

Defendant asserts that, pursuant to the State's compulsory attendance laws, its schools must admit students between the ages of five (5) and twenty-one (21) if they reside within the Austin Independent School District and have not completed high school. Therefore, AISD argues, that it cannot be held liable for allowing violent individuals to attend its schools if they fit the criteria. Plaintiff responds that other alternatives are available and AISD's practice of placing dangerous students in the general population creates a substantial risk of harm for other students.

---

1. There appears to be some dispute concerning the physical condition of the bathroom where the crime occurred, but the Court finds that this is irrelevant for purposes of summary judgment.

## II. ANALYSIS

Summary Judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

To state a claim under Title 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir.1994), *citing West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). The Fifth Circuit has held that the right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process. *Doe v. Taylor Independent School District*, 15 F.3d 443, 450 (5th Cir.1994). With respect to a local governmental unit such as AISD, the Plaintiff must also allege that an "official policy or custom" of the AISD was a cause in fact of the deprivation of rights inflicted. *Leffall*, 28 F.3d at 525.

Liability under 42 U.S.C. § 1983 can be predicated upon three possible theories: (1) that Plaintiff's injuries are directly attributable to policies of the Defendant which reflect deliberate indifference to its students' constitutional rights; (2) that there existed a "special relationship" between the Plaintiff and Defendant which created an affirmative duty on the part of AISD to protect the Plaintiff from harm; and (3) that the Defendant somehow facilitated a "state-created danger." The Court will address each of the possible theories individually.

### A. Deliberate Indifference

A local governmental unit, such as a school district, may be liable under 42 U.S.C. § 1983 where an official policy or custom was a cause in fact of the deprivation of rights inflicted. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). In order to prevail on this claim, the plaintiff must also show that the policy or custom of the school district reflects deliberate indifference to the constitutional rights of its students. *Doe v. Taylor*, 15 F.3d at 454. *See also City of Canton, Ohio, v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); *Gonzalez v. Ysleta Independent School District*, 996 F.2d 745, 760 (5th Cir.1993); *Stoneking v. Bradford Area School District*, 882 F.2d 720, 725 (3rd Cir. 1989).

Plaintiff argues that AISD's policy of placing disruptive and abusive students in the general student population constitutes deliberate indifference to the constitutional rights of the Plaintiff and is a cause in fact of her injuries. This Court rejects that argument on three separate grounds: (1) § 1983 liability does not apply under this theory where the constitutional deprivation is inflicted by private actors and not state employees; (2) the policy in question cannot function as the basis of § 1983 liability because it does not meet the requisite standard; and (3) the Defendant's conduct does not rise to the level of deliberate indifference.

### 1. Private Actors

Although the Courts have recognized a theory of recovery under § 1983 for policies reflecting deliberate indifference, this Court is unaware of any case which applies this doctrine when private actors inflict the actual injury. The cases in which this theory is at issue involve constitutional deprivations by state actors, such as teachers and other employees. *See, e.g., Doe v. Taylor ISD*, 15 F.3d 443 (finding that a high school principal could be found to have been deliberately indifferent to teacher's sexual misconduct); *Gonzalez*, 996 F.2d 745 (finding that the school district did not act with deliberate indifference when it chose to transfer rather than remove a teacher accused of sexually molesting students); *Stoneking*, 882 F.2d 720 (holding that former students could maintain civil rights action against school officials for deliberately indifferent policies with respect to reports of teachers' sexual misconduct).

The Third Circuit has held that § 1983 liability cannot be predicated upon a deliberate indifference theory when private actors commit the underlying acts. *D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1376 (3rd Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). The Plaintiff has failed to cite any case which would indicate that the Fifth Circuit would come to a different result. Therefore, this Court finds that the Defendant cannot be found liable under § 1983 for deliberate indifference because the actual harm was inflicted by private actors.

### 2. *Defendant's Policy*

The Supreme Court has held that § 1983 liability for deliberately indifferent policies attaches "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by policymakers. *City of Canton, Ohio,* 489 U.S. at 389, 109 S.Ct. at 1205.

The Fifth Circuit has held that where "a policy in some sense causes, but does not compel, a constitutional violation, plaintiffs must establish that the particular harm-producing deficiency 'resulted from conscious choice,' that is, they must supply 'proof that the policymakers deliberately chose [measures]' which would prove inadequate." *Gonzalez,* 996 F.2d at 755.

The cases indicate that liability under § 1983 does not attach unless the defendant *created* policies. This is not the situation here. The Defendant followed the compulsory attendance laws of the State of Texas. Under those laws, AISD was required to enroll any student under the age of twenty-one who resided in the district and had not completed high school. The Defendant had no choice and did not deliberately and consciously create a policy.

Plaintiff claims that the summary judgment evidence reveals alternatives from which AISD could have chosen a different course of action. However, these alternatives are limited to disciplinary measures, such as in-school suspension and alternative educational settings. Prior to their assault

of the Plaintiff, the perpetrators in this case had exhibited no disruptive behavior while at Reagan High School. There had been no incident which would warrant such disciplinary measures. The school cannot be required to discipline students based upon a history of unacceptable behavior, especially when the students have already been punished for their prior conduct.

Furthermore, the Supreme Court has held that a municipality may be held liable under § 1983 only when its policies are "the moving force behind the constitutional violation." *City of Canton, Ohio,* 489 U.S. at 389, 109 S.Ct. at 1205. The conduct of AISD in question here does not constitute the motivating force behind the attack on the Plaintiff.

Even assuming that AISD's conduct could be called a "policy," it is not the type of policy which functions as a basis for § 1983 liability. It is not a custom or practice consciously and deliberately chosen from a set of alternatives. Under the mandatory attendance laws of this State, the Defendant does not have any choice but to admit all qualified students. Therefore, this "policy" cannot serve as the basis for liability.

### 3. *Deliberate Indifference Standard*

Although the Supreme Court has yet to decide precisely what level of culpability is required as an element of a substantive due process claim, the cases consistently hold that a § 1983 plaintiff must show that the state actor is guilty of "deliberate indifference" toward the victim of the deprivation. *Leffall,* 28 F.3d at 531. Deliberate indifference is a higher standard than gross negligence in that the latter is a "heightened degree of negligence" while the former is "a lesser form of intent." *Doe v. Taylor ISD,* 15 F.3d at 453 n. 7.

The First Circuit has held that to prove deliberate indifference, a plaintiff must show that (1) an unusually serious risk of harm existed, (2) the defendant had actual knowledge of, or was willfully blind to, the elevated risk, and (3) the defendant failed to take obvious steps to address the risk. *Manarite v. City of Springfield,* 957 F.2d 953, 956 (1st

Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992). Several other circuits have held that state actors may only be found guilty of deliberate indifference if they knew about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what others might see. *See, e.g., Angarita v. St. Louis County,* 981 F.2d 1537, 1545 (8th Cir.1992); *Jones v. City of Chicago,* 856 F.2d 985, 992–993 (7th Cr.1988). In other words, they must have acted either knowingly or with deliberate, reckless indifference.

■ The Defendant's conduct in this case does not rise to the level of deliberate indifference. Once again, AISD followed compulsory attendance laws. They were not aware of the risk that these students presented to the Plaintiff. School officials instituted and enforced disciplinary measures, indicating that they were not willfully ignoring problems in the school. They responded quickly and efficiently to the Plaintiff's report of misconduct. Therefore, there is nothing to suggest that the school officials possessed the requisite culpability for § 1983 liability to attach.

*B. Special Relationship*

■ As a general matter, a state's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. *DeShaney v. Winnebago County DSS,* 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989). However, in certain limited circumstances, the Constitution imposes upon the State affirmative duties of care and protection with respect to certain individuals. *DeShaney,* 489 U.S. at 197, 109 S.Ct. at 1004. This duty generally arises when the state deprives a citizen of liberty so that he is unable to care for himself. *Walton v. Alexander,* 44 F.3d 1297, 1308 (5th Cir.1995) (en banc). A "special relationship" between the private citizen and the state actor arises out of this affirmative duty, and failure to perform the duty violates the citizen's constitutional rights.

■ The Plaintiff in this case argues that a "special relationship" exists between public school students who are forced by compulsory education laws to attend school and the

school district, thus creating an affirmative duty on the part of the school to protect students from injuries inflicted by private actors. The Plaintiff argues that since the state mandates attendance and restrains personal liberty, students are, in effect, "in custody" for Fourteenth Amendment purposes. Plaintiff asserts that AISD is liable under § 1983 because it failed in its constitutional duty to protect her from harm.

Several Circuit Courts have addressed this issue and have consistently held that there exists no "special relationship" between public school students and the school district so as to create an affirmative duty of care. *See D.R. by L.R. v. Middle Bucks,* 972 F.2d at 1370–1373; *Dorothy J. v. Little Rock School District,* 7 F.3d 729, 732 (8th Cir.1993); *Maldonado v. Josey,* 975 F.2d 727, 731 (10th Cir.1992); *J.O. v. Alton Community Unit School District 11,* 909 F.2d 267, 272 (7th Cir.1990). These Courts have held that state-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect it owes to prison inmates or to the involuntarily institutionalized since it does not render a child's guardian unable to care for the child's basic needs. *E.g., Dorothy J.,* 7 F.3d at 732.

Although, in dicta, the Fifth Circuit has indicated that a persuasive argument can be made for applying a *DeShaney* "special relationship" in some measure to "public school students who are forced by compulsory education laws to attend school and have no choice among public schools," the Court has never held that such a relationship exists or that it imposes affirmative duties of care on public schools. *Johnson v. Dallas Independent School District,* 38 F.3d 198, 202–203 (5th Cir.1994). *See also Doe v. Taylor ISD,* 15 F.2d at 451; *Leffall,* 28 F.3d at 528–29.

■ Furthermore, in a recent en banc opinion, *Walton v. Alexander,* the Fifth Circuit held that the state creates a "special relationship" with a person only when the person is taken into state custody and held against his will through the affirmative power of the state. *Walton,* 44 F.3d 1297. In *Walton,* the Court held that there did not

exist a "special relationship" between the state and a resident student who voluntarily consented to state custodial care. The Court reiterated the basic principle that an affirmative, constitutional duty only arises when there is almost total deprivation of personal liberty, as is the case with prison inmates and individuals involuntarily committed to mental institutions. *Id.*

The United States District Court for the Southern District of Texas recently held that there was no special relationship between a school principal and a student that could be the basis of § 1983 liability where the school official failed to protect the student from sexual assault. *Esmeralda v. Partin,* 864 F.Supp. 626, 627 (S.D.Tex.1994). The Court in *Esmeralda* reasoned that there exists no such relationship in the case of day students who return home each day even though attendance is required and the school exercises disciplinary control over the students. *Id.*

Every Court which has specifically addressed this issue has found that no "special relationship" exists between a public school student and the state, and that a public school does not have a constitutional duty to protect its students from private injury. The Plaintiff has failed to cite any case which has held differently. Absent such a relationship, the school has no affirmative duty to protect its students from harm inflicted by private actors.

This Court finds that there is no special relationship between the Plaintiff and the Austin Independent School District and that the school was under no affirmative obligation to protect the Plaintiff. Therefore, the Court finds that AISD did not violate the due process clause in failing to protect the Plaintiff from sexual assault.

### C. State–Created Danger

■ Several Courts have found state actors liable under § 1983 where they affirmatively created or increased a plaintiff's risk of harm. *See, e.g., Wood v. Ostrander,* 879 F.2d 583, 590 (9th Cir.1989); *Cornelius v. Town of Highland Lake,* 880 F.2d 348, 354–355 (11th Cir.1989) *cert. denied sub nom., Spears v. Cornelius,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990); *White v. Rochford,* 592 F.2d 381, 382–383 (7th Cir.1979). This "state-created danger" theory is premised on the idea that when state actors knowingly place a person in danger, the due process clause of the Constitution renders them accountable for the foreseeable injuries resulting from their conduct, "whether or not the victim was in formal state custody." *Johnson,* 38 F.3d at 200.

The Plaintiff argues that AISD's policy of placing potentially violent individuals in the general student population created a grave risk of harm to other students. She asserts that the state-created danger theory is applicable in this case because AISD's conduct exposed her to danger or, at the very least, increased the possibility of harm.

No Fifth Circuit case has ever predicated § 1983 recovery on a state-created danger theory. *Johnson,* 38 F.3d at 201. In two recent decisions, the Court rejected the state-created danger arguments without expressly deciding whether such a theory was recognized in this Circuit. This Court will follow the same approach. For purposes of this order, this Court will assume that there exists a valid, constitutional claim under § 1983 when a state actor creates or exacerbates a dangerous situation for a private citizen.

In *Leffall v. DISD* and *Johnson v. DISD,* the plaintiffs raised arguments based upon the state-created danger theory. The Fifth Circuit found that the pleadings fell short of the demanding standard for constitutional liability and failed to establish the requisite culpability on the part of school officials. The Court stated that even under the rationale of cases recognizing a state-created danger theory of § 1983 liability, it is not enough to show that the state increased the danger of harm from third persons; the plaintiff must also show that "the state acted with the requisite culpability in failing to protect the plaintiff from that danger to make out a constitutional violation. *Leffall,* 28 F.3d at 531. Although it is not clear what level of culpability is required, the Court found that the conduct must rise to the level of deliberate indifference and that gross negligence is not sufficient. *Id.*

In *Johnson,* the Fifth Circuit set forth a three-part test for determining whether a state actor's conduct was so culpable as to fall under this theory. To prevail, a plaintiff must show that the environment created by the state actors is dangerous, that they know it is dangerous, and that they used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. In other words, "the defendants must have been at least deliberately indifferent to the plight of the plaintiff." *Johnson,* 38 F.3d at 201.

■ In the present case, the Plaintiff fails to meet this three-part test. Looking first to whether the environment was dangerous, there is nothing to indicate that Reagan High School should be considered a dangerous environment. According to deposition testimony, Reagan did not have anyone assigned to the campus with the title of security guard or police officer. For security measures, the school employed one school resource officer and three hall monitors. In addition, assistant principals and others were charged with security duties. The bathroom where the crime occurred is adjacent to an actively used classroom and is surrounded by other classrooms and hallways. Reagan High School maintains specific policies which prohibit misconduct and enforce discipline. There have been no incidents of sexual assault prior to this and there are no allegations of any previous criminal conduct on the campus. There is simply no evidence from which a trier of fact could conclude the school was tantamount to a high-crime area.

■ Secondly, Plaintiff fails to establish that the school had actual knowledge of a serious risk of danger to the Plaintiff. The evidence indicates that neither of the perpetrators had ever engaged in conduct which warranted removal from Reagan High School. School officials testified that they did not know of any reason why these students would be considered dangerous or why special precautions should be taken with them that were not taken with other students. There is no evidence in either the pleadings or the affidavits which indicates that school officials were actually aware of any danger to the plaintiff.

■ Finally, the Plaintiff must establish that state actors created an opportunity that would not have otherwise existed for the injury to transpire. There must exist sufficiently culpable affirmative conduct to find that the Defendant created such an opportunity. Examples of this kind of conduct include placing a plaintiff in a dangerous environment stripped of means of defense and cut off from sources of aid, or placing a plaintiff in a unique, confrontational encounter with a violent criminal. *Johnson,* 38 F.3d at 202. The situation at hand is not comparable. The officials at Reagan High School merely followed the State's compulsory attendance laws and enrolled qualified students in the school. Admittedly, these students had a history of disciplinary problems, but allowing them back in school does not constitute the type of culpable behavior envisioned in the state-created danger theory. Although it could be argued that placing the perpetrators in the general student population created an opportunity that would not have otherwise existed, there is nothing in the conduct of school officials which indicates a deliberate indifference to the welfare of their students.

The pleadings and summary judgment evidence presented in this case do not meet the high constitutional standard necessary to prove state-created danger. The Plaintiff here was the tragic victim of random, criminal violence. Her injuries were not the result of school officials' "deliberate, callous decisions to interpose (her) in the midst of a criminally dangerous element." *Id.* There is no evidence to suggest that Reagan High School was a dangerous environment, or that school officials were actually aware of the danger to the Plaintiff. Also, the school did not engage in the requisite culpable conduct or create an opportunity for criminal behavior which would not have otherwise occurred. Therefore, the Court finds that the Plaintiff has not proven § 1983 liability under a state-created danger theory.

## III. CONCLUSION

The Court finds that the Plaintiff has failed to establish Defendant's liability under

# 80

42 U.S.C. § 1983. There does not exist a special relationship between the Plaintiff and AISD such that the Defendant would have an affirmative duty to protect her from harm, Plaintiff was not subjected to state-created danger, and, finally, the practice and customs of AISD do not reflect deliberate indifference to the constitutional rights of its students. Therefore, the Court is of the opinion that Defendant's Motion for Summary Judgment should be granted.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that the above numbered and styled cause of action is CLOSED and any pending motions are hereby DISMISSED AS MOOT.