# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3153

_____

Elsie Alexander, Individually          *
and as Guardian of Larry               *
Alexander, An Incompetent              *
Person,                                *
                                       *
                 Appellant,            *
                                       *
        v.                             *
                                       *
Pathfinder, Inc.; Colleen Black,       *
Executive Director of Pathfinder, Inc.,*
Individually and in Her Official       *
Capacity; Cindy Crook, Administrator   *
of Pathfinder Home, Individually and   *
in Her Official Capacity; Tom Dalton,  *
Director of the Arkansas Department     * Appeal from the United States
of Human Services, in His Official      * District Court for the Eastern
Capacity; Sheri Simon, Psychological    * District of Arkansas.
Consultant to Pathfinder, Individually *
and in Her Official Capacity; Marilyn  *
Martin, Licensed Social Worker         *
Consultant for Pathfinder, Individually*
and in Her Official Capacity; and Colonel *
McLyle G. Zumwalt, Joan R. Zumwalt,    *
Alton Johnston, Senator Max Howell,    *
T. P. White, Robert Bamburg, Robert    *
Ferguson, Jr., Senator Bill Gwatney,   *
and Martha Lawhon, All Individually,   *

d/b/a Pathfinder, Inc., and Pathfinder     *
Schools, Inc.,     *
    *
       Appellees.     *

_____

Submitted: June 14, 1999

Filed: August 31, 1999
_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and PANNER,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Elsie Alexander brought this action against Pathfinder Schools, Inc., doing business as Pathfinder, Inc., an intermediate care facility for the mentally retarded (ICF/MR), its board of directors and several individuals employed by or providing services to the facility (Pathfinder defendants), and Tom Dalton as director of the Arkansas Department of Human Services (DHS). Ms. Alexander sought relief for damages that she and her son, Larry Alexander, an incompetent person, allegedly suffered in the period leading up to and following his discharge from a group home operated by Pathfinder. (Although both Ms. Alexander and her son are plaintiffs, for the sake of simplicity we frame the discussion in her name only.)

Ms. Alexander made claims under 42 U.S.C. § 1983 for violation of the first amendment and of the constitutional guarantees of due process and equal protection, under the Americans with Disabilities Act (ADA), *see* 42 U.S.C. §§ 12101-12213, and

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

under § 504, *see* 29 U.S.C. § 794, of the Rehabilitation Act of 1973, *see* 29 U.S.C. §§ 701-796*l*; she also asserted state-law tort claims for invasion of privacy, assault, battery, negligence, and intentional infliction of emotional distress. The district court[2] granted the defendants' motions to dismiss and for summary judgment. Ms. Alexander appeals and we affirm.

I.

Ms. Alexander's son was a resident of a group home operated by Pathfinder. When Pathfinder informed Ms. Alexander that her son would be discharged from the home because his medical problems had become so severe that Pathfinder could no longer care for him, she requested a hearing before a state administrative hearing officer. The hearing officer upheld the discharge and gave the Alexanders thirty days to find placement at another facility.

Ms. Alexander took no steps to find another placement for her son but sued instead. The district court dismissed all of the claims on the grounds that they were precluded by the administrative hearing. *See Alexander v. Pathfinder, Inc.*, 906 F. Supp. 502, 506-07 (E.D. Ark. 1995) (*Alexander* I). Ms. Alexander appealed and we affirmed in part and reversed in part. *See Alexander v. Pathfinder, Inc.,* 91 F.3d 59 (8th Cir. 1996) (*Alexander* II). All matters that were or could have been considered at the administrative hearing were precluded, we said, *id.* at 62-63, but we remanded for consideration of a due process claim and state-law claims of invasion of privacy, assault, battery, and negligence, *id.* at 63.

More than a year after our decision in *Alexander* II, Ms. Alexander filed an amended complaint that included additional claims based on events that occurred after the hearing officer's decision. Ms. Alexander maintained, first, that Pathfinder

---

[2]The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

unlawfully discharged Mr. Alexander from the workshop day treatment program, which provides daily living training, social skills training, and paid work for persons with developmental disabilities. Second, she asserted that Pathfinder and DHS wrongfully denied Mr. Alexander access to the Medicaid waiver program, which provides home and community-based services to a limited number of individuals with developmental disabilities who would otherwise require an ICF/MR level of care. Ms. Alexander complained that the defendants refused to add Mr. Alexander's name to the list of persons qualified to participate in the program although they had allegedly told Ms. Alexander previously that he was qualified. Finally, Ms. Alexander contended that on two occasions when she tried to return Mr. Alexander to the group home after a weekend visit, she found the facility locked and deserted and representatives of Pathfinder refused to give Mr. Alexander additional medication. (After each incident, Ms. Alexander obtained a temporary restraining order directing Pathfinder to readmit Mr. Alexander.)

Ms. Alexander contended that Pathfinder violated the first amendment when it denied Mr. Alexander the services of the workshop and of the Medicaid waiver program and when it locked Mr. Alexander out of the facility, because these acts were in retaliation for her original lawsuit. She contended that the actions of DHS, in denying Mr. Alexander access to the Medicaid waiver program, violated the first amendment for the same reason. Ms. Alexander added a new federal claim against DHS for failure to promulgate rules for administrative hearing procedures and reiterated her original claims that DHS failed to provide a competent hearing officer, interfered with the hearing officer's duties, and failed to monitor Pathfinder adequately for compliance with applicable regulations, in violation of the constitutional guarantee of due process.

In addition, Ms. Alexander reasserted various state-law claims from her original complaint that we held were not precluded, namely, invasion of privacy, assault, battery, and negligence. She added a claim for intentional infliction of emotional

-4-

distress that dealt with conduct different from that in her original complaint. This new claim was based, evidently, on the incidents in which Mr. Alexander was allegedly locked out of the Pathfinder facility and was denied additional medication.

The amended complaint added several new defendants, namely, Sheri Simon and Marilyn Martin, respectively a psychological consultant and a social worker consultant for Pathfinder, and the members of the board of Pathfinder. All deny that they are proper defendants in this case. DHS, Ms. Simon, and Ms. Martin moved to dismiss, and the Pathfinder defendants and the members of the Pathfinder board moved for summary judgment. The district court granted all of the defendants' motions.

## II.

We first consider Ms. Alexander's claims arising from the fact that Pathfinder discharged Mr. Alexander from the workshop day treatment program. Ms. Alexander stated in an affidavit that various Pathfinder employees assured her that Mr. Alexander could continue to participate in the workshop even after he ceased to be a resident at the Pathfinder facility. After Ms. Alexander sued, however, and after Mr. Alexander was definitely discharged from the Pathfinder group home, he was denied admission to the workshop. No reason for the denial was given.

Ms. Alexander contends that the defendants acted in retaliation for her complaints against them, in violation of her rights under the first amendment, the constitutional guarantee of due process, the ADA, and § 504 of the Rehabilitation Act. Alternatively, or in addition, Ms. Alexander avers that the defendants excluded her son because of his condition and thereby denied him the equal protection of the law. The defendants, on the other hand, reply that Mr. Alexander was discharged because Pathfinder no longer received Medicaid funds for Mr. Alexander's participation in the workshop once he left the group home.

These facts, viewed in the light most favorable to Ms. Alexander as the nonmoving party, do not support either her claim under the first amendment or her due process and equal protection claims against Pathfinder, because these rights can be asserted only against state actors. Pathfinder is a private corporation and the fact that it receives Medicaid funds does not convert it into a state actor. *See Blum v. Yaretsky*, 457 U.S. 991, 1002-12 (1982) (private nursing home not state actor despite extensive regulation and payments from state); *see also Hoyt v. St. Mary's Rehabilitation Center,* 711 F.2d 864, 865-67 (8th Cir. 1983). Similarly, the Pathfinder board and Sheri Simon and Marilyn Martin, consultants to Pathfinder, are not state actors and may not be sued under 42 U.S.C. § 1983.

The ADA and § 504 claims that were related to Mr. Alexander's discharge from the workshop were not adverted to in the amended complaint. Ms. Alexander first mentioned them, very generally, in her response to the defendants' motion for summary judgment. Only on appeal does Ms. Alexander state her theory that when the defendants excluded Mr. Alexander from the workshop, they violated her rights and those of Mr. Alexander under not only the first and fourteenth amendments but also the ADA and § 504. We do not consider claims that were not raised below. *Dorothy J. v. Little Rock School District*, 7 F.3d 729, 734 (8th Cir. 1993).

### III.

DHS instituted a developmental disabilities alternative community services program (the Medicaid waiver program), *see* 42 U.S.C. § 1396n(c), to provide home and community-based services to a limited number of individuals who would otherwise require an ICF/MR level of care. *See Arkansas Department of Human Services v. Kistler*, 898 S.W.2d 32, 33 (Ark. 1995). Ms. Alexander contended that Mr. Alexander was qualified by DHS as an eligible candidate for the program before she originally sued but that Pathfinder and DHS denied him eligibility after that challenge and refused to add him to the list of qualified applicants. She argued that this sequence of events

is evidence that Pathfinder and DHS were acting in retaliation, in violation of the first amendment.

It is not clear from either the amended complaint or the briefs whether Ms. Alexander was contending that her son was denied any or all Medicaid benefits, including the minimal payments from the Medicaid waiver program, or whether her claim was that despite Mr. Alexander's eligibility for Medicaid, he was excluded from the waiver program because DHS decided that he should be in a facility that provided an ICF/MR level of care. It seems to us that the latter alternative is somewhat more likely, namely, that Ms. Alexander did not want her son to be institutionalized and was seeking to enroll him in the program so that she could care for him at home.

Ms. Alexander did not produce any evidence, however, that the Medicaid waiver program is suitable for Mr. Alexander in his present condition. Ms. Alexander's amended complaint stated only that she was assured of waiver services before she sued, but she did not say who gave this assurance or when it was made; in particular, she did not state whether this assurance was given before Mr. Alexander's health deteriorated. In short, Ms. Alexander did not present sufficient facts to survive a motion for summary judgment. "While a party moving for summary judgment carries the burden of demonstrating the absence of any genuine issue of material fact, a nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Young v. Warner-Jenkinson Company, Inc.*, 152 F.3d 1018, 1021 (8th Cir. 1998).

Ms. Alexander further contended that DHS refused to provide her with information about possible funding or alternative placements for Mr. Alexander, again in retaliation for her legal action against Pathfinder. She did not specify the services to which she believes she was entitled, though, nor did she say who refused to provide her with the relevant information and under what circumstances. This claim therefore fails for lack of specificity.

## IV.

Ms. Alexander raises a number of due process claims against DHS with respect to the administrative hearing.  First, Ms. Alexander claims that she and her son were deprived of due process by the department's failure to promulgate rules and regulations for its administrative hearing procedures as required by Ark. Code Ann. § 25-15-203. In particular, Ms. Alexander contends that she could not conduct adequate discovery before the hearing and thus was unable to anticipate or rebut the evidence presented against her.

The record of the administrative hearing, however, demonstrates that Ms. Alexander had considerable opportunity for discovery and she does not say that she asked the hearing officer for more.  She has not shown, therefore,  that she was harmed by the absence of rules governing discovery.  We note, moreover, that due process requires only that an administrative hearing be fundamentally fair.  We have never held that there is a constitutional right to pretrial discovery in all such proceedings.  *See Beef Nebraska, Inc. v. United States*, 807 F.2d 712, 719 (8th Cir. 1986).

Second, Ms. Alexander alleged that DHS failed to provide a fair and impartial state administrative hearing officer to preside over the hearing, but she did not offer any evidence or even any specific allegations of bias or partiality as she was required to do to survive summary judgment.  *See  Miller v. Schoenen*, 75 F.3d 1305, 1309-11 (8th Cir. 1996).  On appeal, she offers for the first time as evidence of the hearing officer's incompetence a passage in his opinion that, she argues, indicates that he applied the wrong burden of proof.  This argument comes entirely too late.  As stated above, we will not consider arguments raised for the first time on appeal.  *See Dorothy J.*, 7 F.3d at 734.

Ms. Alexander contends in addition that DHS interfered with the hearing officer's performance of his duties by making unreasonable demands on his time.  As evidence

-8-

of this interference, she offers a remark by the hearing officer to the effect that he could perhaps have written a more thorough opinion if he had had more time. The time constraints on the hearing officer were imposed by Ark. Code Ann. § 20-10-1005(a)(2)(C), however, and not by DHS. DHS and all parties agreed, moreover, to give the hearing officer an extra nine days to prepare his opinion. Ms. Alexander has presented no evidence that DHS exerted any untoward influence upon the hearing officer, and summary judgment was therefore correctly granted on this part of her complaint.

Finally, Ms. Alexander contends that DHS failed to monitor Pathfinder for compliance with nursing home regulations regarding behavior modification programs and patient discharge. She suggests on appeal that Mr. Alexander was ultimately discharged from Pathfinder because DHS failed properly to monitor the facility. This claim is barred by claim and issue preclusion. The hearing officer found that Mr. Alexander was discharged for good cause and not because the Pathfinder defendants tried to harass or bully Ms. Alexander into removing him. Even if DHS did fail to monitor for compliance with regulations concerning behavior modification or patient discharge, therefore, this failure did not harm Ms. Alexander and she has no claim for damages on that account.

V.

We turn now to the state-law tort claims that we held in *Alexander* II were not precluded by the administrative hearing, beginning with the claim for invasion of privacy. The amended complaint states that the Pathfinder defendants instructed their staff to audiotape all conversations in which Ms. Alexander took part, including those with her son in his own room. The state administrative hearing officer found that Ms. Alexander initially agreed to the taping in order to prove her allegations that the Pathfinder staff used abusive language, but that she later objected to the practice. Pathfinder employees continued to tape her conversations anyway. Ms. Alexander

contended that this constituted an invasion of privacy in the form of intrusion. *See Restatement (Second) of Torts* § 652B, at 378-80 (1977).

The district court held that the audiotaping did not amount to an invasion of privacy under Arkansas law, and we agree. Arkansas courts have had few occasions to deal with the tort of invasion of privacy in the form of intrusion, but when they have done so they have generally drawn upon the relevant discussion in the *Restatement*. *See, e.g., Dunlap v. McCarty*, 678 S.W.2d 361, 364 (Ark. 1984). The *Restatement*, *see* § 652B, comment a, at 378, defines intrusion as "an intentional interference with [a person's] interest in solitude or seclusion ... of a kind that would be highly offensive to a reasonable man." Under § 652B, comment d, *id.* at 380, there is no liability unless the interference is "the result of conduct to which [a] reasonable man would strongly object."

We note first that Ms. Alexander testified at the administrative hearing that she did not object when the Pathfinder employees entered Mr. Alexander's room to audiotape her conversations with her son. Since the employees carried tape recorders in their hands and it was therefore clear what they intended to do, we hold that this failure to object is fatal to that part of Ms. Alexander's claim that rests on the recording of her private conversations with her son.

Ms. Alexander similarly failed to state a claim for invasion of privacy based on the audiotaping of conversations between her and Pathfinder employees, especially in light of the facts that Pathfinder had a legitimate reason for making the recordings and that Ms. Alexander knew she was being recorded. Ms. Alexander did not point to any case law suggesting that one party's audiotaping his or her own conversations with another amounts to an invasion of the other's privacy. Indeed, we note that Arkansas law explicitly permits one party to a cordless or cellular telephone communication to record that communication, even without the knowledge of the other. *See* Ark. Code Ann. § 5-60-120(a).

-10-

## VI.

Ms. Alexander brought assault and battery claims against the Pathfinder defendants because on one of Mr. Alexander's visits home she discovered bruises on his back that she believed were the result of abuse. She offered no proof, however, that Mr. Alexander's bruises were even caused by a member of the Pathfinder staff. The assault and battery claims therefore cannot survive a motion for summary judgment.

Ms. Alexander also asserted that the defendants were negligent in their investigation of the alleged abuse, but the defendants offered evidence to the district court that they conducted a thorough investigation of the incident. Ms. Alexander did not contest any of this evidence, nor did she suggest what additional steps the defendants should have taken. In order to make out a claim for negligence, a plaintiff must offer proof of "a failure to exercise proper care in the performance of a legal duty which the defendant owe[s] the plaintiff." *Shannon v. Wilson*, 947 S.W.2d 349, 356 (Ark. 1997). Since Ms. Alexander did not offer evidence of how the Pathfinder defendants failed to perform a legal duty that was owed to her and her son, summary judgment was correctly granted.

Summary judgment was also correctly granted on Ms. Alexander's claim that the Pathfinder defendants negligently hired and negligently supervised staff members. Ms. Alexander failed to provide proof that Pathfinder was negligent in hiring or supervising the alleged abuser, even assuming that the guilty person was a member of the Pathfinder staff. In short, she has not shown that there was the genuine issue for trial that Fed. R. Civ. P. 56(e) requires.

## VII.

Ms. Alexander's original claim for intentional infliction of emotional distress was based on a behavior modification plan devised by Pathfinder; this claim, although reiterated in the amended complaint, is now precluded by the administrative hearing. *See Alexander* I. An additional claim for intentional infliction of emotional distress, in

the amended complaint but not in the original complaint, was apparently based primarily on three events that occurred after the thirty-day grace period that she was given to find a new placement for Mr. Alexander.

On one occasion, the Alexanders returned to the facility after a visit home by Mr. Alexander, only to find the place deserted and the doors locked. Mr. Alexander had with him only enough medication for his visit home and was denied additional medicine by Pathfinder staff. The administrator of the Pathfinder facility told Ms. Alexander that her son had been discharged, but Ms. Alexander obtained a temporary restraining order (TRO) to have him readmitted. The second event was when the Alexanders returned to the group home after obtaining the TRO and found that many of Mr. Alexander's things were packed in boxes. This is said to have caused them "further emotional distress." Finally, after another visit home by Mr. Alexander, with sufficient medication only for the weekend, the Alexanders again found the facility locked and were denied additional medicine by Pathfinder staff. Again, Ms. Alexander had to obtain a TRO to have her son readmitted.

On appeal, Ms. Alexander argues that the defendants' acts of locking Mr. Alexander out of the group home without notice and without additional medication comprised all of the elements required to support a claim of intentional infliction of emotional distress in Arkansas. *See Tandy Corp. v. Bone*, 678 S.W.2d 312, 314-17 (Ark. 1984). Ms. Alexander's proof, however, failed to raise an inference that the alleged lockouts were willful or wanton, *see id.* at 314. Ms. Alexander's claims for intentional infliction of emotional distress relative to the alleged lockouts, therefore, cannot survive a motion for summary judgment.

Ms. Alexander's amended complaint included only one other event that she cited specifically as causing emotional distress, namely, finding Mr. Alexander's possessions packed in boxes, as described above. The fact that Pathfinder staff packed Mr. Alexander's things in boxes, however, can hardly be said to have been "extreme

and outrageous" and "beyond all possible bounds of decency," which is an element of a claim for intentional infliction of emotional distress, *see Shepherd v. Washington County*, 962 S.W.2d 779, 791-92 (Ark. 1998). This claim for intentional infliction of emotional distress, therefore, cannot escape summary judgment.

## VIII.

Finally, Ms. Alexander mentions at several points in her appeal brief that the district court erred in entering summary judgment for the defendants without allowing her adequate time for discovery. It is not clear to us whether she raises this as an issue on appeal. There is in any case no indication in the docket or in Ms. Alexander's brief that she requested discovery or that she argued to the district court that summary judgment should not be entered because of the lack of time to conduct discovery, although more than six months passed between her response to the motion for summary judgment and the district court's final order.

Fed. R. Civ. P. 56(b) permits a motion for summary judgment by the defendants at any time. If the opposing party has a good reason for being unable to present facts essential to its response, it may request a continuance to permit discovery under Fed. R. Civ. P. 56(f). The rules do not automatically provide for discovery absent such a request. We have held, moreover, that it is not an abuse of discretion for a district court to grant summary judgment before the opposing party has conducted any discovery at all, even if that party has requested a continuance, if that party does not demonstrate how discovery will provide rebuttal to the movant's claims. *See Dulany v. Carnahan*, 132 F.3d 1234, 1238-39 (8th Cir. 1997). We therefore find no error here.

## IX.

For the reasons stated, we affirm the district court's grant of dismissal to DHS and the grant of summary judgment to the Pathfinder defendants and the members of the Pathfinder board. We need not, therefore, consider the Pathfinder board members' argument that they are not proper defendants in this case. Ms. Alexander does not

explicitly ask us to reverse the district court's grant of dismissal to Ms. Simon and Ms. Martin and we deem her claims against them abandoned.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.