Jennifer BOSLEY, et al., Plaintiffs,

v.

KEARNEY R-1 SCHOOL DISTRICT, Defendant.

No. 93-0759-CV-W-9.

United States District Court, W.D. Missouri, Western Division.

Oct. 19, 1995.

Steve A. Matalone, II, Matalone & O'Connor, Christopher R. Williams, Kansas City, MO, for plaintiffs.

Robert L. Jackstadt, Peter Ruger, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, MO, William E. Shull, William Adkins Law Firm, Liberty, MO, for Kearney R–1 School Dist.

Paul L. Wickens, Morrison & Hecker, Kansas City, MO, Donald L. Logerwell, Garvey, Schubert & Barer, Seattle, WA, for Richard Logerwell.

*ORDER AMENDING MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I (42 U.S.C. § 1983), III (NEGLIGENCE), IV (SPECIAL RELATIONSHIP), V (LOSS OF SERVICES) AND VI (LOSS OF CONSORTIUM); GRANTING THE DEFENDANT'S MOTION TO DISMISS COUNT VII (SLANDER); AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT II (20 U.S.C. § 1681)*

BARTLETT, Chief Judge.

Due to some computer file errors, portions of the October 4, 1995, opinion were omitted, and others were included which should have been left out. Therefore, the previous order is withdrawn and this order substituted for it.

### I. *Introduction*

This is an action brought under 42 U.S.C. § 1983 and 20 U.S.C. § 1681 which includes certain pendent state law claims, all stemming from alleged instances of sexual harassment of the young plaintiff in the spring of 1992. Defendant Kearney R–1 School district moves to dismiss or, alternatively, for summary judgment.

Plaintiff requests oral argument on the motion. Counsel for both parties have fully briefed their arguments so it is not necessary to hold oral arguments.

#### A. *Background*

Plaintiffs' original Complaint named Kearney R–1 School District as the sole defendant. Later, plaintiffs were granted leave to add Superintendent Richard Logerwell as a second named defendant. Defendant Kearney R–1 School District moved seeking termination of the action against it. Subsequent to the filing of that motion, all claims against defendant Richard Logerwell individually were dismissed. Therefore, this order addresses only the claims against the school district.

Mother and daughter, the plaintiffs in this action, are both named Jennifer Bosley. Hereinafter, the mother will be referred to

as Mrs. Bosley, and the daughter as Jennifer Bosley.

Plaintiff Jennifer Bosley contends in Count I of her Second Amended Complaint that defendant Kearney R–1 School District violated Jennifer's constitutional rights of privacy, substantive due process, equal protection and other rights secured by the Constitution of the United States in that:

1) defendant and defendant's agents acted under color of state law;

2) defendant and defendant's agents knew of but failed to adequately investigate or act upon plaintiffs' repeated complaints of sexual harassment of Jennifer Bosley by her fellow students;

3) defendant and defendant's agents had the ability to control and limit this inappropriate conduct of the students in their charge but failed to do so; and

4) the conduct of defendant and defendant's agents constituted a continuing, wide-spread, and consistent pattern of unconstitutional conduct motivated by malice, by a reckless or a deliberate indifference to the rights of the plaintiff, or by a tacit authorization by the defendant of the conduct of the offending students and agents of the defendant.

In Count II, both plaintiffs assert a claim under 20 U.S.C. § 1681 in which they allege that defendant and defendant's agents 1) failed to fulfill their duty to stop inappropriate sexual harassment of female students and discrimination of students based on sex; and 2) thereby intentionally discriminated against Jennifer, causing her to be excluded from, and denying her the benefits of, the defendant's federally funded educational program.

Plaintiffs assert in Count III a state claim sounding in negligence. They allege that defendant breached various duties: to protect students from sexual harassment, to report this inappropriate behavior to appropriate authorities, to supervise agents and students, to investigate rumors and complaints of alleged sexual harassment, to adopt customs and practices or rules and regulations to prevent sexual harassment, to follow clearly established rules to prevent harm, and to prevent tortious, intentional and criminal acts of third parties of which the defendant had notice.

In Count IV, plaintiffs assert that the conduct of the defendant and defendant's agents constituted a breach of the duties arising from their special school/student relationship to Jennifer. Specifically, plaintiffs allege that the defendant had the duty of protecting Jennifer and providing her a place of safety.

Mrs. Bosley asserts in Counts V, VI and VII, respectively, claims for loss of services and medical expenses, for loss of consortium, and for slander.

Defendant moves for judgment on the pleadings as to all counts for failure to state a claim upon which relief can be granted and/or for summary judgment as a matter of law. Defendant supplied correspondence and other materials in support of its motion, and plaintiffs supported their response with affidavits and other materials. Therefore, in accord with Rule 12(c), Federal Rules of Civil Procedure, I will treat this as a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure.

Defendant argues that the school district is entitled to judgment as a matter of law on Count I (§ 1983) because no constitutional or federal duty to the plaintiff was breached by the defendant. As to Count II (20 U.S.C. § 1681), defendant maintains there is no evidence the defendant acted intentionally or that defendant had a formal policy of unlawful discrimination. Further, defendant argues that Mrs. Bosley, a non-student, cannot bring a claim under 20 U.S.C. § 1681.

As to the state law claims, defendant contends these are pendant claims which must be dismissed due to lack of subject matter jurisdiction, or on the ground they are barred by sovereign immunity, or that plaintiff failed to produce evidence sufficient to create a genuine issue of material fact.

II. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 477 U.S. at 249, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson v. Liberty Lobby,* 477 U.S. at 251, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 477 U.S. at 252, 106 S.Ct. at 2512.

### III. *Factual Findings*

#### A. *Undisputed Facts*

Defendant properly included a statement of undisputed facts in their motion. However, the statement of "facts" included several statements of law, and defendant's exhibits contained unsworn copies of correspondence instead of affidavits. Plaintiffs, on the other hand, did not in their response, as required by Local Rule 13(G)(1), "begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists...." Rather, plaintiffs stated, "Plaintiffs do not disagree to any material extent with the statement of undisputed facts."

It became clear, however, in plaintiffs' argument and affidavits that they do in fact disagree with some of the facts set forth by the defendant. Plaintiffs' admission on one

hand and implicit denial on the other created a dilemma: which do the plaintiffs intend for me to act upon? The significance of this problem is apparent in light of Local Rule 13(G)(1): "All facts set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." I suspect for that reason, plaintiffs moved to supplement their response, and in that supplement contested a number of facts to which they had earlier consented.

For purposes of this motion, based on the pleadings, depositions, admissions and affidavits presented, the following facts are undisputed.

Jennifer Bosley, a minor, was a student in the Kearney R–1 School District during the 1991–1992 and 1992–1993 school years. During the 1992–1993 school year Richard Whitford was principal at Kearney Elementary School where Jennifer Bosley was enrolled. Richard Logerwell was the Superintendent of the Kearney R–1 School District during this same period.

On March 4, 1992, Jennifer Bosley was identified by a school bus driver as having drawn and passed an "obscene" picture to another student on the school bus. Richard Whitford interviewed Jennifer Bosley about the drawing. Jennifer acknowledged that she had drawn it and Whitford assessed a "punishment" of six lost recesses which were spent in the principal's office. Jennifer Bosley later testified that she had drawn only the outlines of the bodies but not the "private parts", and that she had so informed Principal Whitford during the interview. She also stated that perhaps Principal Whitford had misunderstood her.

Jennifer's mother, Mrs. Bosley, filed a complaint concerning the March 4, 1992, incident and a number of alleged incidents of sexual harassment of Jennifer by other students, with the Office of Civil Rights, United States Department of Education. After investigating the various incidents complained of by the plaintiffs, the Office of Civil Rights issued reports on March 31, 1993, and August 11, 1993, setting forth its findings that each incident had been properly investigated by the school district, and that the school

district's response in each case was both prompt and reasonable.

Mrs. Bosley met with Logerwell on at least one occasion, sometime substantially after the alleged sexual harassment of her daughter by other students. They discussed problems Mrs. Bosley was having with an elementary school principal and did not address the conduct of other students complained of in this action. Logerwell was polite, cooperative and attentive to Mrs. Bosley during the meeting.

Other than the complaint filed by Mrs. Bosley, the only complaint of sexual harassment or sexual discrimination filed against the Kearney R–1 School District is styled *Rise Cramer and Jeannie M. Cramer v. Kearney R–1 School District, Ryder Student Transportation Services, Inc. and Richard Logerwell,* case No. 94–0464–CV–W–8 (U.S. District Court, Western District of Missouri). This is a companion matter involving some of the same incidents occurring on the school bus during March through May 1992.

Vicki Miller, assistant superintendent of the Kearney R–1 School District, was responsible during the 1992–1993 school year for receiving from parents complaints regarding student conduct while riding the school buses. Vicki Miller received a complaint from Mrs. Bosley regarding students who sang a sexually inappropriate song about her children while riding the school bus, but Jennifer Bosley was not riding the bus at the time the offensive song was sung. School personnel investigated Mrs. Bosley's report, imposed discipline on the students participating in the song, and reported the same to Mrs. Bosley. Mrs. Bosley said that the matter regarding the song was "closed" as far as she was concerned.

On October 1, 1993, plaintiff Mrs. Bosley notified the defendant school district that she was withdrawing her children from the school district. She also submitted a letter from a psychologist stating the need for withdrawal from the school district and for a home bound teacher. Plaintiff was told that the situation did not qualify under state law for assignment of a home bound teacher and that she would need to return the children to

**1016**

school by October 13, 1993. Otherwise, a report would be made to the Missouri Division of Family Services pursuant to R.S.Mo. § 210.115.

On or about October 8, 1993, counsel for plaintiff forwarded a letter to the attorney for the school district stating that plaintiff had started home schooling her children. Superintendent Logerwell was unaware that plaintiff was attempting to home school her children. On October 13, 1993, Logerwell made a report to the Missouri Division of Family Services that the children were not in school.

Finally, all of the alleged acts of sexual harassment were committed by other students. No school employee, teacher, principal, assistant superintendent, superintendent or school board member is alleged to have participated in the harassment.

## B. *Disputed Facts*

For purposes of this motion, based on the pleadings, motions and affidavits presented, the following facts are disputed:

1) Whether Richard Logerwell was informed before August, 1992 of previous complaints raised by Mrs. Bosley regarding sexual harassment of her daughter. Specifically, whether Mrs. Bosley informed Logerwell in the spring of 1992 of the alleged harassment.

2) Whether Vicki Miller received complaints from Mrs. Bosley in the spring of 1992 regarding sexual harassment of Jennifer Bosley.

3) Whether the Kearney R–1 School District failed to investigate allegations of sexual harassment by its students.

4) Whether there are a sufficient number of incidents of sexual harassment among the students of the Kearney R–1 School District during the 1990–1991 school year and the months of March through May 1992 to conclude that the district knew of an ongoing practice of sexual harassment.

5) What, if any, specific acts of sexual harassment Jennifer Bosley suffered from her fellow students.

## IV. *Summary Judgment Will Be Granted in Defendant's Favor as to Plaintiff Jennifer Bosley's Claim under 42 U.S.C. § 1983*

### A. *Introduction*

Defendant moves for summary judgment in its favor on plaintiff's § 1983 claim arguing that no dispute of material fact exists and judgment is ripe as a matter of law. Specifically, defendant contends that: 1) any constitutional harm suffered by Jennifer Bosley was at the hands of private persons not acting under color of state law; 2) that the school district has no constitutional or federal duty to protect students from private actors; 3) that no evidence exists to show that Superintendent Logerwell knew of the alleged misconduct until after plaintiff's complaint was filed with the Missouri Division of Human Rights; and 4) that any omissions or commissions by other school district employees regarding the plaintiff's complaints of constitutional harm cannot be imputed by operation of law to Superintendent Logerwell or the Kearney R–1 School District.

### B. *Analysis*

The United States Congress stated in 42 U.S.C. § 1983 as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress. . . .

■ The statute was designed to deter state actors from using their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if deterrence failed. *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992).

■ Under 42 U.S.C. § 1983, plaintiff must show that 1) the defendant acted under color of state law; 2) the defendant's action

involves one or more violations of plaintiff's constitutional rights; and 3) that the constitutional harm suffered was actually and proximately caused by the defendant's conduct. *Chapman v. Musich,* 726 F.2d 405, 407 (8th Cir.1984), *cert. denied,* 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984).

■ In applying the second requirement of a § 1983 action, Jennifer Bosley asserts a substantive due process claim against the defendant school district under 42 U.S.C. § 1983 for the violation of her Fourteenth Amendment liberty interests. The school district allegedly violated these interests by not acting to prevent a number of incidents involving sexual harassment of Jennifer at the hands of other students.

■ The Fourteenth Amendment Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago County Dept. Of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). Therefore, the purpose of the clause is "to protect people from the State, not to ensure that the State protects them from each other." 489 U.S. at 196, 109 S.Ct. at 1003.

■ State and local governmental entities have no duty under the substantive component of the Due Process Clause of the Fourteenth Amendment "to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In that case, the plaintiff claimed that state and local entities had a constitutional duty to protect a small child from physical abuse at the hands of his father. 489 U.S. at 195, 109 S.Ct. at 1002–03. The defendant entities received complaints that the child was being abused by his father and had reason, as a result of several home visits and personal observations by officials, to believe that this was the case. 489 U.S. at 191, 109 S.Ct. at 1001. Nonetheless, the entities did not act to permanently remove the child from his father's custody. The child was subsequently beaten so severely that he lapsed into a life-threatening coma, suffering permanent brain damage to the extent that he will spend the rest of his life confined to an institution for the profoundly retarded. 489 U.S. at 191–93, 109 S.Ct. at 1001–02. The Court lamented the tragedy that occurred, but held that the state and local defendants were not liable under 42 U.S.C. § 1983.

In the case before me, the allegations of sexual harassment upon which the claim rests are asserted to have been the acts of Jennifer Bosley's fellow students. No school district employee or official is alleged to have participated in any act of sexual harassment, other than by failing to take action once they received complaints. The Supreme Court determined in *DeShaney* that the state is under no constitutional duty to take action under these circumstances. *DeShaney,* 489 U.S. 189, 109 S.Ct. 998 (1989).

■ However, in certain limited circumstances the Constitution does impose on the state affirmative duties of care and protection with respect to particular individuals. *DeShaney,* 489 U.S. at 198, 109 S.Ct. at 1004; and *Dorothy J. v. Little Rock School District,* 7 F.3d 729, 732 (8th Cir.1993) (citations omitted) (holding that defendant school district was under no constitutional duty of care to protect mentally retarded public high school student from a sexual attack by another student while at school). Where the plaintiffs have been incarcerated or involuntarily committed to a mental hospital, the state entity is constitutionally required to provide adequate food, shelter, clothing and medical care, and to provide plaintiffs reasonable safety from themselves and others, including private actors. *Id.* These duties arise only when the state takes a person into custody and holds her there against her will making her so unable to care for herself that she is wholly dependent on the State to do so.

*DeShaney,* 489 U.S. at 199–200, 109 S.Ct. at 1005; *Dorothy J.,* 7 F.3d at 732.

■ In the present case, no facts have been presented from which it could be concluded reasonably that Jennifer Bosley was taken into custody by the defendant school district and held there against her will. She was simply a student enrolled in the schools of the defendant school district. The fact that Mrs. Bosley eventually removed Jennifer from the school district indicates that she could have done so at any time and was not wholly dependent on the school district to protect her daughter. "Public school attendance does not render a child's guardians unable to care for the child's basic needs." *Dorothy J.,* 7 F.3d at 732.

■ Plaintiff asserts that compulsory school attendance laws created the custodial relationship necessary to impose liability. The federal Courts of Appeal which have addressed the question of whether compulsory school attendance laws create the necessary custodial relationship between school and student to give rise to a constitutional duty to protect students from harm by non-state actors have rejected the existence of this duty. *Dorothy J.,* 7 F.3d 729, 732 (8th Cir.1993) ("state-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect which it owes to prison inmates or to the involuntarily institutionalized"); *D.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364 (3rd Cir. 1992) (en banc), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *Maldonado v. Josey,* 975 F.2d 727 (10th Cir. 1992), *cert.* denied, 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); and *J.O. v. Alton Community Unit School District 11,* 909 F.2d 267 (7th Cir.1990). *See Wright v. Lovin,* 32 F.3d 538, 540 (11th Cir.1994), where the court questioned these decisions.

I am bound to apply the law as determined by the United States Court of Appeals for the Eighth Circuit. *BPS Guard Services, Inc. v. National Labor Relations Board,* 942 F.2d 519 (8th Cir.1991) (holding that decision by Court of Appeals for the Eighth Circuit is binding on all inferior federal courts within the circuit). In as much as I am unable to find any United States Supreme Court or Eighth Circuit Court of Appeals *en banc* decision overruling *Dorothy J.,* I must follow the law articulated in *Dorothy J..* Therefore, compulsory school attendance does not create the custodial relationship necessary to impose constitutional liability on the defendant school district for failing to protect Jennifer Bosley against alleged sexual harassment by her fellow students.

■ Plaintiff, however, further asserts that because school district employees at various levels knew of the complaints of sexual harassment, the school district was required to affirmatively prevent further incidents of sexual harassment: "The whole nature of this lawsuit is ... based upon the defendants [sic] failure to protect the plaintiffs once it became aware of the alleged sexual harassment." Pl. Suggestions in Opposition at 5. This argument was addressed and rejected by the Supreme Court in *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1005–1006. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* (citation omitted).

Therefore, plaintiff's argument that the defendant school district is liable because it knew of the alleged sexual harassment is rejected. Thus, as a matter of law, a custodial relationship did not exist sufficient to place a constitutional duty upon defendant to protect plaintiff from sexual harassment by fellow students.

■ The court in *Dorothy J.* recognized a second exception to the general rule that the state is under no affirmative duty to protect its citizens from harm by private actors: where the state affirmatively places a particular individual in a position of danger in which the individual would not otherwise have been. 7 F.3d at 733 (citations omitted). "In most every circuit court decision imposing § 1983 liability because the state affirmatively created or enhanced a danger, 'the immediate threat of harm has a limited range and duration,' unlike the indefinite risk created by enrolling" a student in a public school.

*Id.* (*citing Reed v. Gardner,* 986 F.2d 1122, 1127 (7th Cir.1993)). In *Reed,* the court found liability where the arresting officers left a drunk passenger in control of a motor vehicle. 986 F.2d at 1123–24.

▮ In the case at bar, the school district took no affirmative act which placed Jennifer Bosley in a position of danger in which she would not otherwise have been. Plaintiffs assert that the defendant school district affirmatively created a danger when they failed to discipline or to remove the offending students. Answering the same argument in *Dorothy J.,* the court said: "Such an assertion would be just another way of saying that the school environment creates a custodial relationship giving rise to a constitutional duty to protect." 7 F.3d at 734.

▮ The plaintiff argues that to prevail upon a claim under § 1983, she need only establish "[t]he existence of a continuing, widespread, [sic] pattern of unconstitutional misconduct by the governmental entity's employees." Pl. Suggestions at 6 (*citing Thelma D. by Delores A. v. Board of Education of The City of St. Louis,* 934 F.2d 929, 932–33 (8th Cir.1991); and *Jane Doe "A" v. The Special School District of St. Louis,* 901 F.2d 642, 645 (8th Cir.1990)). These cases involved sexual harassment in the work place by another employee.

▮ As established above, defendant is under no constitutional duty to protect students from unlawful conduct committed against them by other students. Under these circumstances, the failure of the school district to do what it had no constitutional duty to do cannot be a constitutional violation. Even if the "pattern" theory were extended from the school district/employee situation to the school district/student situation, plaintiff has not presented facts that would

permit a reasonable jury to conclude that there was a continuing, widespread pattern of unconstitutional misconduct by defendant's employees.[1]

Therefore, no exception to the general rule set forth in *DeShaney* applies in this case. The defendant school district was under no constitutional duty to take affirmative action to prevent further sexual harassment of Jennifer Bosley by her fellow students. Because of this finding, the plaintiff's assertion of a substantive due process violation under 42 U.S.C. § 1983 must fail as a matter of law.

▮ Plaintiff has not set forth any factual support for her claim that defendant violated her right to equal protection. The requirements for establishing a § 1983 claim based on allegations of equal protection violations are the same as those for establishing the underlying constitutional violation. *Baker v. McCollan,* 443 U.S. 137, 140, 144 n. 3, 99 S.Ct. 2689, 2692, 2695 n. 3, 61 L.Ed.2d 433 (1979). One essential element of an equal protection violation is purposeful discrimination against similarly situated individuals. *Batson v. Kentucky,* 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986).

On the record before me, I find no evidence from which a reasonable jury could conclude that defendant purposely treated Jennifer Bosley differently than male students in the same or similar circumstances. In fact, neither the Complaint nor the facts presented with regard to the Motion for Summary Judgment suggest that boys subjected to sexual harassment are treated any differently than Jennifer Bosley.

Therefore, I find that plaintiff's substantive due process and equal protection claims under § 1983 fail as a matter of law. Summary judgment will be entered in defendant's favor on Count I of plaintiff's Complaint.[2]

---

1. Plaintiff's claim actually sounds in negligence. That is, she is alleging that the defendant school district had an affirmative constitutional duty to act to prevent student-on-student sexual harassment, that defendant negligently failed to discharge that duty and that her injuries were proximately caused by defendant's breach of duty. In such a claim, the plaintiff has the burden of establishing the existence of the alleged affirmative duty. *See e.g., Myers v. Moore Engineering, Inc.,* 42 F.3d 452 (8th Cir.1994) (finding no lia-

bility on the defendant city for negligent enforcement of building code compliance where there was no special relationship between city and plaintiff). If the existence of the duty is not established by summary judgment evidence, the issue of a breach of that duty does not arise.

2. As will be established *infra,* Missouri has placed upon school districts and their officials responsibility for failure to act in the type of situation presented in this case. But not "all

### V. *Summary Judgment Will Be Denied on Plaintiffs' Claim Under 20 U.S.C. § 1681*

Count II of Plaintiffs' Second Amended Complaint is brought under 20 U.S.C. § 1681 (Title IX) which provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance....

In *Clyde K. v. Puyallup School Dist. No. 3*, 35 F.3d 1396, 1401–02 (9th Cir.1994), the court stated:

> Given the extremely harmful effects sexual harassment can have on young female students, public officials have an especially compelling duty not to tolerate it in the classrooms and hallways of our schools.... Moreover, school officials might reasonably be concerned about liability for failing to remedy peer sexual harassment that exposes female students to a hostile educational environment.

■ "Unquestionably, Title IX placed on the ... Schools the duty not to discriminate on the basis of sex." *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, at 75, 112 S.Ct. 1028, at 1037, 117 L.Ed.2d 208 (1992). Under Title IX a protected person has a private cause of action for damages for intentional discrimination based on sex. *Franklin*, 503 U.S. at 73–78, 112 S.Ct. at 1037–39; *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

Defendant moves for summary judgment on Count II, arguing that Mrs. Bosley is an improper plaintiff, that Title IX requires a showing of intentional discrimination and that plaintiff has failed to make a showing of intentional discrimination by defendant based on gender. Plaintiff argues that the failure of defendant to take adequate remedial action after defendant had notice of the alleged ongoing sexual harassment of Jennifer Bos-

ley shows an intent to discriminate based on gender.

### A. *Mrs. Bosley's Claim Under 20 U.S.C. § 1681*

■ Both Mrs. Bosley and Jennifer Bosley bring this claim. On its face, the statute applies only to students and participants in educational programs. Mrs. Bosley is neither and, therefore, is an improper plaintiff. *R.L.R. v. Prague Public School District*, 838 F.Supp. 1526, 1529 (W.D.Okla.1993) (holding that a student's parents may not sue under Title IX). Therefore, defendant will be granted summary judgment on Mrs. Bosley's claim under 20 U.S.C. § 1681.

### B. *Jennifer Bosley's Claim*

■ Plaintiff seeks monetary damages under Title IX. To do so, she must show that defendant's failure to take adequate remedial action in response to her complaints of sexual harassment by her peers was the result of intentional discrimination based on her sex. *Franklin*, 503 U.S. at 73–78, 112 S.Ct. at 1037–39.

■ Discriminatory intent is a fluid concept that is sometimes subtle and difficult to apply. *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1185 (11th Cir.1983) (holding that trial court's finding of discriminatory intent was not clearly erroneous where disparity in provision of municipal services existed among white and black areas of the city). Discriminatory intent is not synonymous with a discriminatory motive. *Id.* (citing *Palmer v. Thompson*, 403 U.S. 217, 223, 91 S.Ct. 1940, 1944, 29 L.Ed.2d 438 (1971)). Neither does it require proof that unlawful discrimination is the sole purpose behind each act of the defendant being scrutinized. *Id.* (citing *McGinnis v. Royster*, 410 U.S. 263, 274, 93 S.Ct. 1055, 1062, 35 L.Ed.2d 282 (1973)).

■ "It is, rather, the cumulative evidence of action and inaction which objectively manifests discriminatory intent." *Id.* (citing *United States v. Texas Education Agency*,

---

common-law duties owed by government actors were ... constitutionalized by the Fourteenth Amendment." *Daniels v. Williams*, 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662

(1986). My conclusion that a § 1983 claim is not presented by Count I is limited only to plaintiff's claims of constitutional violations.

564 F.2d 162 (5th Cir.1977)). "It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (holding that state's veteran preference statute did not deprive women of equal protection of laws, since preference was for veterans of either sex). Therefore, in the context of the claims in this case, plaintiff must show that the school district selected a particular course of action in responding to her complaints of sexual harassment at least in part "because of" plaintiff's sex.

It is well-established that discriminatory intent may be proven through "direct" evidence. Plaintiff presented facts showing that complaints were made to school administrators about the problems on the bus and that no action was taken by the district. Plaintiff has not presented under Rule 56 facts that would show directly that the district's failure to act was because of plaintiff's sex.

▮ Discriminatory intent may also be established by inference. "Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Washington v. Davis,* 426 U.S. 229, 241, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976). *See, e.g., Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (finding intentional age discrimination under the Age Discrimination in Employment Act and the Employee Retirement Income Security Act of 1974, where employees were fired by their employer when they had only "a few more weeks" before their pension rights would vest); *but see Franklin,* 503 U.S. at 73, 112 S.Ct. at 1037; *Guardians Assn. v. Civil Service Comm'n of New York City,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) (a claim for monetary damages based on discriminatory impact is not available under Title IX).

Plaintiff relies on the law developed under Title VII for establishing that an employer is responsible for a "sexually hostile environment." Suggestions in Opposition at 14, 16. Plaintiff argues that a complaint to an employer plus a failure to take corrective action is enough to raise the inference of discriminatory intent under Title VII and should be enough under Title IX.

▮ The Supreme Court has recognized similarities between the two statutes in analyzing intentional discrimination under Title IX. *Franklin,* 503 U.S. at 73–76, 112 S.Ct. at 1037–38. In *Franklin,* the Court stated that "the same rule [as when a supervisor sexually harasses a subordinate under Title VII] should apply when a teacher sexually harasses and abuses a student." 503 U.S. at 75, 112 S.Ct. at 1037. Following the Court's logic, the same rule as when an employer is held liable for a sexually hostile work environment under Title VII must apply when a school district has knowledge of a sexually hostile school environment and takes no action.

In *Franklin,* the respondents and intervenor, the United States, argued against implying intent to discriminate under Title IX because in *Pennhurst State Sch. & Hospital v. Halderman,* 451 U.S. 1, 28–29, 101 S.Ct. 1531, 1545–46, 67 L.Ed.2d 694 (1981), the Supreme Court had said that remedies were limited under spending clause statutes such as Title VI and Title IX when the alleged violation was unintentional. Respondents and the United States argued the same limitation should apply to intentional violations. The Supreme Court disagreed:

> The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award. *See id.* [451 U.S.] at 17, 101 S.Ct. at 1540. This notice problem does not arise in a case such as this, in which intentional discrimination is alleged. Unquestionably, Title IX placed on the Gwinnett County Schools the duty not to discriminate on the basis of sex, and 'when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s]" on the basis of sex.' *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). We believe the same rule should apply when a teacher

sexually harasses and abuses a student. Congress surely did not intend for federal monies to be expended to support the intentional actions it sought by statutes to proscribe.

*Id.,* 503 U.S. at 74, 112 S.Ct. at 1037.

■ By saying that *Meritor,* involving a claim under Title VII, gave notice to the defendant school district in *Franklin,* and by saying that Congress' purpose in enacting Title IX was to prevent federal monies from being used to support intentional discrimination declared unlawful in other statutes, *Franklin* supports the conclusion that Title VII law provides standards for enforcing the anti-discrimination provisions of Title IX.

The Supreme Court has also stated that lower courts should "accord [Title IX] a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299 (1982). Lower courts have utilized Title VII in analyzing claims under Title IX.

In *Mabry v. State Board of Community Colleges and Occupational Education,* 813 F.2d 311 (10th Cir.1987), *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987), the court determined that Title VII is "the most appropriate analogue when defining Title IX's substantive standards." The court then used Title VII's standards for determining whether sex discrimination had occurred in a reduction of force termination.

In *Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir.1988), the court concluded that hostile environment lawsuits by school district employees are permitted under Title IX and adopted Title VII's standards for assessing a hostile environment claim. *See also Yusuf v. Vassar College,* 35 F.3d 709 (2d Cir.1994) (defining contours of a student's private right of action under Title IX for gender discrimination occurring in college disciplinary proceedings); *Preston v. Commonwealth of Virginia ex rel. New River Community College,* 31 F.3d 203 (4th Cir. 1994) (adopting Title VII's standards for assessing a retaliation claim); *O'Connor v. Peru State College,* 781 F.2d 632, 642 n. 8 (8th Cir.1986) (implying that the standards governing claims arising under Title VII and Title IX were the same).

■ The Equal Employment Opportunity Commission's (EEOC) guidelines under Title IX entitled "Procedures for Complaints of Employment Discrimination Filed Against Recipients of Federal Financial Assistance" instructs agencies to consider Title VII standards in determining whether an employer has violated Title IX. The Office of Civil Rights also uses Title VII's hostile environment standard in determining that an educational institution's failure to take appropriate remedial action regarding known student-to-student sexual harassment is a violation of Title IX. *See* Letters of Findings, referred to in *Doe v. Petaluma City School District,* 830 F.Supp. 1560 at 1573 (N.D.Cal. 1993). The guidelines and Letters of Findings are entitled to some deference. *Young v. Community Nutrition Inst.,* 476 U.S. 974, 979–83, 106 S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986) (holding that although an agency's interpretation of a statute is not conclusive, it is entitled to deference as long as it is consistent with the language of the statute).

■ Therefore, I will utilize principles developed under Title VII for determining whether sufficient facts have been presented to create an issue for trial on the issue of intentional discrimination under Title IX.

■ Under Title VII, oppressive and sexually hostile environments give rise to harassment claims on the theory that a discriminatory environment is a term or condition of employment. *See Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Meritor,* 477 U.S. at 64, 106 S.Ct. at 2404. Under Title IX, a discriminatory environment in an "educational program or activity receiving federal funds" would constitute a violation of the Act.

■ The elements of a Title VII hostile environment claim are: 1) the plaintiff belongs to a protected group; 2) the plaintiff was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition, or privilege of employment; and 5) defendant knew or should have known of the harassment and failed to take proper remedial ac-

tion. *Kopp v. Samaritan Health System, Inc.*, 13 F.3d 264 (8th Cir.1993).

■ The predicate acts which support a hostile environment sexual-harassment claim need not be explicitly sexual in nature. *Hall v. Gus Construction Co., Inc.*, 842 F.2d 1010, 1014 (8th Cir.1988). Rather, the key issue "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris*, —— U.S. at ——, 114 S.Ct. at 372 (Ginsburg, J., concurring).

■ Hostile environment sexual harassment is actionable under Title VII when it is sufficiently patterned or pervasive. *Hall*, 842 F.2d at 1014. To determine whether a work environment is hostile or abusive, the adjudicator must consider all of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, —— U.S. at ——, 114 S.Ct. at 371.

■ Therefore, the trier of fact must consider all evidence that suggests a hostile work environment. However, only those incidents of unequal treatment of the plaintiff that would not occur but for the sex of the plaintiff, if sufficiently patterned or pervasive, will be considered as an illegal condition of employment under Title VII. *Hall*, 842 F.2d at 1014 (citing *McKinney v. Dole*, 765 F.2d 1129, 1139 (D.C.Cir.1985)).

■ The court must find that a specific basis exists for imputing the conduct that created a hostile environment to the employer. *Murray v. New York University College of Dentistry*, 57 F.3d 243 at 249 (2nd Cir. 1995). To establish a basis for imputing conduct to an employer in Title VII cases where the claim involves peer-on-peer (non-supervisor) harassment or harassment by third parties, an employer may be held liable if it is established that the employer knew or should have known of the hostile environment and took no or insufficient remedial action. *Id.; Hall*, 842 F.2d at 1013; *Barrett v. Omaha Nat'l Bank*, 726 F.2d 424 (8th Cir.1984) (holding there was no basis for liability where employer took appropriate remedial actions within four days after being notified of the harassment).

■ The standards developed under Title VII to protect employees from sex discrimination by employers are adaptable to protect persons participating in federally supported educational programs from sex discrimination by the educational institution receiving federal financial aid. By doing so, the congressional purpose underlying Title IX of not allowing federal monies to be expended to support intentional invidious discrimination based on sex as defined by the law developed under Title VII will be furthered.

■ Therefore, the elements of a claim against a school district for student-on-student sexual harassment in any educational program or activity receiving federal financial assistance are: 1) the plaintiff was subjected to unwelcome sexual harassment; 2) the harassment was based on sex; 3) the harassment occurred during the plaintiff's participation in an educational program or activity receiving federal financial assistance; and 4) the school district knew of the harassment and intentionally failed to take proper remedial action. If the finder of fact makes these findings, the finder of fact may infer that defendant intentionally failed to take appropriate remedial action because of plaintiff's gender.

■ Once a school district becomes aware of sexual harassment, it must promptly take remedial action which is reasonably calculated to end the harassment. Plaintiff in this case has created a genuine factual issue through her affidavits as to whether the defendants reasonably and adequately responded to her complaints of sexual harassment.

Jennifer Bosley testified under oath that in 1992, she was hit on her bottom by Mike Holthouse, but she was too embarrassed to tell anyone. Jennifer Bosley depo. at 19. In March 1992, a bus driver concluded that while riding the school bus Jennifer Bosley drew an "obscene" picture and passed it around. Jennifer Bosley depo. at 38–42.

The driver reported Jennifer to the principal. Def.'s Suggestions at 2, Statement of Undisputed Facts at ¶¶ 2–9; undisputed by plaintiffs in Suggestions at 5. Principal Whitford interviewed Jennifer about the picture and Jennifer acknowledged that she had drawn it. *Id.* She was given six recesses in the principal's office as a punishment. *Id.* Later, she testified that she had informed Whitford that a boy had drawn the private parts, but that perhaps the principal had misunderstood her. *Id.*

Jennifer Bosley testified that a boy rubbed himself and took his shirt off for two weeks after the picture incident. Jennifer Bosley depo. at 115. The same boy was brushing up against some of the girls. *Id.* at 116. Jennifer and her mother went to the school and complained about the boy's conduct. *Id.* at 116.

Students on the bus were saying that another girl on the bus, Rise Cramer, was having sex with her dog. *Id.* at 122. Other boys were spreading the same allegations. *Id.* at 122. A boy named Glen was accusing her of being homosexual. *Id.* at 126.

Reference is made to other facts testified to by Jennifer Bosley. For example, she supposedly testified that she and her mother complained together to Dr. Torgerson, principal of the intermediate school, or to the bus driver. Pl. Suggestions at 15. She is supposed to have testified that a boy named Justin Eaton claimed that she was having sex with a frog and that she had AIDS. Pl. Suggestions at 16. However, these allegations were not supported by references to specific pages in Jennifer Bosley's deposition.

Mrs. Bosley signed an affidavit in which she affirms that she complained of the sexual harassment of her daughter

> on several occasions during the spring of 1992 to Kearney R–1 School District personnel including Richard Logerwell (Superintendent of the Kearney R–1 School District), Richard Whitford (Principal of the school Jennifer was attending), Vicki Miller (Assistant Superintendent), Joy Torgerson (Principal of the Kearney Intermediate School) among others.

Aff. at 1, 2. Mrs. Bosley allegedly complained in person and by telephone. Aff. at 2. She also affirmed that "no satisfactory action was taken on behalf of the Kearney R–1 School District and as a result I removed my children from the school district." Aff. at 2.

Mrs. Bosley testified that she did not feel that her complaints to Vicki Miller and Bob White (contract manager for the bus company—Def.'s Suggestions at 6–7) "were getting anywhere." Mrs. Bosley depo. at 152. She further testified that she presented a letter of complaint to Superintendent Logerwell on November 3, 1992. *Id.* at 152. She stated that she had no reason to believe that prior to November 3, 1992, she had talked to or visited with Mr. Logerwell about any of the problems occurring on the bus. *Id.*

Mrs. Bosley discussed with Vicki Miller a matter regarding Silas White. *Id.* at 169. It is unclear whether this was a complaint or simply a question. *Id.* at 169. However, two days later, Silas White was removed from riding the same school bus as her daughter. *Id.*

Mrs. Bosley complained to Vicki Miller about a sexually explicit song that was sung about her daughter by boys on the school bus. Def.'s Suggestions at 7, Statement of Undisputed Facts, ¶¶ 35–37; Undisputed by plaintiffs in Suggestions at 5. Mrs. Bosley admitted that her daughter was not on the bus at the time the song was sung. *Id.* School officials investigated the matter and reported to Mrs. Bosley that the students involved in the song had been disciplined. *Id.* She stated the matter was closed as far as she was concerned. *Id.*

Mrs. Bosley also admitted that she met with Superintendent Logerwell on only one occasion. Mrs. Bosley depo. at 137–38, 142. Logerwell was polite, cooperative and attentive to her during the meeting. *Id.* at 143–44.

Robert J. Shoop, Ph.D., plaintiffs' expert on schools and sexual harassment, signed a sworn affidavit in which he stated that the defendant "did not have an adequate policy in place to prevent the sexual harassment of students and failed to apprise the students of what would be considered inappropriate be-

havior and conduct." Shoop Aff. at 1. He asserts that the defendant "failed to adequately investigate allegations of sexual harassment by its students." *Id.*

Plaintiff also furnished an affidavit from Francis F. Cramer, father of Rise Cramer, in which he says that he complained to Dr. Joy Torgerson in early May 1992 concerning the sexual harassment of his daughter. Francis Cramer Aff. at 2.

In addition, plaintiff provides the affidavit of Jeannie Cramer, mother of Rise Cramer, in which she says that she complained to the Ryder Bus contract manager in the spring of 1992 about sexual harassment of her daughter by the same students who were harassing Jennifer Bosley. Jeannie Cramer Aff. at 2.

Based on these facts that were properly presented in support of plaintiff's opposition to the Motion for Summary Judgment, a reasonable jury could conclude that 1) Jennifer Bosley was subjected to unwelcome sexual harassment on the school bus; 2) the harassment was based on her sex; 3) the harassment occurred during Jennifer Bosley's participation in a school activity, i.e., during transportation to and from school provided by the school district which received federal financial assistance; and 4) the school district knew of the harassment and failed to take appropriate remedial action. If a reasonable jury made these findings, it could conclude that the defendant intentionally discriminated against Jennifer Bosley based on her sex during a school activity which receives federal financial assistance in violation of Title IX. Therefore, there is a genuine issue for trial.

### C. *Notice*

▇▇▇▇ Before a school district may be held liable for monetary damages for a violation of Title IX, the district must have had sufficient notice of its potential liability. See *Franklin,* 503 U.S. at 73, 112 S.Ct. at 1037. But there is no notice problem where a school intentionally discriminates. *Id.*

▇▇▇▇ Title IX was enacted in 1972. The Office of Civil Rights (OCR) officially defined sexual harassment in 1981 and conducted compliance reviews and complaint investigations under all the civil rights statutes for over a decade. The OCR issued Letters of Findings in 1989 using the hostile environment standard in a Title IX case to find a violation where the school failed to take adequate measures to stop student-on-student sexual harassment. *See, Petaluma,* 830 F.Supp. at 1573. *Franklin* put school districts on notice in February, 1992, that they could be liable for monetary damages in sexual harassment claims under Title IX. 503 U.S. at 75, 112 S.Ct. at 1038. Title IX regulations required recipients to appoint a Title IX coordinator, and to adopt and publish grievance procedures for prompt and equitable resolution of student and employee complaints. 34 C.F.R. §§ 106.8–9 (1989). I conclude that in March through May, 1992, there was ample notice to the school district of potential liability for damages for its failure to take adequate remedial measures to prevent continued sexual harassment of Jennifer Bosley.

For the foregoing reasons, defendant's Motion for Summary Judgment on Count II will be denied.

### VI. *Plaintiffs' Claims Under Missouri Law*

▇▇▇▇ Plaintiffs assert several common law claims under Counts III through VII. A federal court dealing with supplemental state law claims must apply substantive state law. *Siler v. Louisville & Nashville Railroad,* 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909). Therefore, Missouri law is controlling on these issues.

### *Count III—Negligence*

Defendant moves on several grounds for summary judgment on plaintiffs' (Mrs. Bosley and Jennifer Bosley) negligence claim. Without deciding the other issues raised by defendant, summary judgment on plaintiffs' negligence claim must be granted for the following reason:

1. *Defendant Did Not Waive Its Sovereign Immunity for Plaintiffs' Claim of Negligence*

▇▇▇▇ Defendant school district asserts that plaintiffs cannot recover on a negligence claim because of sovereign immunity. Def. Suggestions at 17. Plaintiffs argue that de-

fendant waived sovereign immunity by purchasing general liability insurance which covers this claim. Pl. Suggestions at 17.

Plaintiffs assume that the school district had an insurance policy that provided coverage for the alleged negligence of the defendant. The events giving rise to this case occurred in 1992 but the copy of the policy defendant supplied is dated "1993." Def. Suggestions, Exhibit H at Cover page. On the other hand, defendant states in its Suggestions in Support of its motion that it "has purchased" a general liability policy. The words used in defendant's Suggestions imply that the insurance was in effect in 1992. Defendant's Suggestions at 17.

Given these facts, I am unable to decide, as a matter of law, whether the district had a liability insurance policy covering these events in 1992. Ordinarily, such a situation would preclude the granting of a motion for summary judgment. However, assuming that the insurance policy (Exhibit H) was in effect in 1992, the district's purchase of liability insurance did not waive sovereign immunity.

■ Plaintiffs, the parties seeking to establish coverage under the insurance policy, have the burden of proving that the claim is within the coverage afforded by the policy. *See Truck Insurance Exchange v. Heman*, 800 S.W.2d 2, 3–4 (Mo.Ct.App.1990).

Plaintiffs assert that their negligence claim is covered as "Improper Board Action" under the policy. Pl. Suggestions at 17. The summary page of the policy lists "Improper Board Action" as an example of insured losses under "Errors and Omissions" coverage provided in the "Additional Coverages" section. Def. Suggestions, Exhibit H at 21.

Defendant was insured for "all Loss which the Member or a covered person shall be legally obligated to pay as a result of any civil claim or claims made against them because of a Wrongful Act." *Id.* "Wrongful Act" is defined to "mean any actual or alleged error or misstatement or misleading statement, or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by a covered person in the performance of their duties for the

School District." Def. Suggestions, Exhibit H 1.c. at 21. The school district, board members, employees, and volunteers acting within the scope of their duties are "covered persons" under the policy. *Id.*

Defendant cites *State ex rel. Cass Medical Center v. Mason*, 796 S.W.2d 621 (Mo. banc 1990) and *Balderree v. Beeman*, 837 S.W.2d 309 (Mo.Ct.App.1992), in support of its argument that the policy did not cover claims of negligence. Def. Suggestions at 18. *Mason* involved a policy which contained express exclusions for any claims other than those arising out of dangerous conditions on the defendant's property or the operation of motor vehicles by its employees. 796 S.W.2d at 622. In *Balderree*, the applicable policy language was: "We will pay those sums that the insured becomes legally obligated to pay as damages.... No other obligation or liability to pay sums ... is covered unless explicitly provided for...." 837 S.W.2d at 318. The court specifically found there were no other covered obligations under the policy. *Balderree*, 837 S.W.2d at 319.

The language of the insurance policy in the instant case is distinguishable from the policy language in *Mason* and *Balderree*. The instant policy expressly provides coverage for an "act or omission or neglect or breach of duty" in its definition of "Wrongful Act." Plaintiffs assert a claim for negligence or breach of duty. Therefore, if the policy covers the relevant time period, and if there is no applicable exclusion, the defendant apparently waived its sovereign immunity for such "wrongful acts" of which plaintiffs complain.

However, express exclusions eliminate coverage for "Bodily Injury or Property Damage" and "Personal Injury." Pl. Suggestions, Exhibit H 1.d.(2)(3) at 21. "Bodily injury" is stated to include "bodily injury, sickness or death." *Id.* "So defined, we understand the clause to require some physical harm to the person claiming a bodily injury." *Ward v. American Family Insurance Company*, 783 S.W.2d 921, 923 (Mo.Ct.App.1989) (interpreting identical language).

"Personal Injury" is defined under the general liability definition section and includes:

(1) Bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom and if arising from the previous, mental anguish and mental injury; ... (3) Libel, slander, defamation of character, humiliation or the invasion of the rights of privacy, unless arising out of advertising, broadcasting or telecasting activities.

Plaintiffs' claim of negligence is a bodily injury or personal injury claim as defined in the policy. Plaintiffs' assert that:

As a direct and proximate result of the maliciousness [sic], reckless or deliberate indifference to the rights of the plaintiff she suffered the following injuries, all of which are serious, permanent and painful: (a) She has sustained and will sustain mental anguish and suffering, along with physical pain and suffering together with anxiety, depression, nervousness and irritability; and other diagnosable traumas, the exact nature and extent of which is unknown at this time; (b) She has suffered gross humiliation, disgrace and embarrassment; (c) She has and will in the future continue to be deprived of her enjoyment of life; (d) She has suffered reasonable and necessary expense for medical care and will continue to suffer the same in the future, the exact amount of which is unknown at this time; and (e) The need for professional counseling and has incurred costs in obtaining the same, the nature and extent of such injury and damages is [sic] unknown at this time.

Second Amended Complaint at 4–5, ¶ 18.

Jennifer Bosley's claim for damages for 1) mental anguish; 2) humiliation; 3) loss of enjoyment of life; 4) physical pain and suffering; and 5) expenses for medical care and counseling are the very kinds of harm excluded under the Errors and Omissions coverage.

Thus, defendant was under a duty to prevent the continued sexual harassment of Jennifer Bosley, but defendant did not purchase liability insurance to protect itself from claims resulting from its failure to do so. Therefore, the school district did not waive its sovereign immunity for such a claim. De-

fendant's Motion for Summary Judgment on Count III will be granted.

*Count IV—Special Relationship*

■ In Count IV of plaintiffs' Complaint, plaintiffs seek damages for defendant's breach of its duty to protect Jennifer Bosley from sexual harassment by fellow students. This duty is said to arise from the "special relationship" between school and student. This claim is based on state law. Complaint at 11, Count IV ¶ 2. However, defendant's Suggestions in Support of Motion for Summary Judgment treats this as a federal law claim arising under 42 U.S.C. § 1983 in which the issue is a *constitutional* duty arising from a special relationship. *See* Def. Suggestions at 21–25. Plaintiffs failed to point out this distinction in their response. Pl. Suggestions at 18–19. All of the discussion of case law in the parties' briefs is inapplicable to this case.

■ The general rule under Missouri common law is that a person has no duty to protect another from deliberate attacks by a third person. *Nappier v. Kincade,* 666 S.W.2d 858, 860 (Mo.Ct.App.1984). However, Missouri courts have specifically held that a duty to control the conduct of third persons will be imposed if a "special relationship" exists between the parties. *Id.* In such a case, it is the relationship itself which provides the basis for the duty. *See Hoover's Dairy, Inc., v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426 (Mo. banc 1985).

■ Among the relationships which Missouri courts have found to come within this category are "innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee." *Id. at 432; Keenan v. Miriam Found.,* 784 S.W.2d 298, 302 (Mo.Ct.App.1990); *R.C. v. Southwestern Bell Tel. Co.,* 759 S.W.2d 617, 620–21 (Mo.Ct. App.1988). These special relationships are those in which a party entrusts himself to the protection of another and relies on that person to provide a place of safety. *Id.*

■ Therefore, Missouri law recognizes a special relationship between schools and stu-

dents in which the schools have a duty to provide a place of safety for their students.

Defendant did not raise sovereign immunity in its discussion of this count. A claim for a breach of the duty to protect Jennifer Bosley arising from the special relationship between school and student is a specialized negligence claim for the same damages claimed in Count III. Therefore, the same analysis which caused me to conclude that Count III (negligence) was barred by sovereign immunity leads me to conclude that Count IV is also barred. Therefore, defendant's Motion for Summary Judgment on Count IV will be granted.

### Count V—Loss of Services

■ The parties agree that if an underlying negligence claim for Jennifer Bosley does not survive the Motion for Summary Judgment, then Mrs. Bosley has no derivative claim for loss of services and medical expenses. Pl. Suggestions at 19; Def. Suggestions at 25. *See Garrison v. Ryno,* 328 S.W.2d 557 (Mo.1959); *Clark v. Martin,* 650 S.W.2d 699 (Mo.Ct.App.1983).

Because summary judgment will be granted on Jennifer Bosley's claims under Counts III and IV, defendant's Motion for Summary Judgment on Count V of plaintiff's Second Amended Complaint will be granted.

### Count VI—Loss of Consortium

■ Defendant and Plaintiff agree that under Missouri law Mrs. Bosley cannot recover for loss of consortium. Pl. Suggestions at 19; Def. Suggestions at 26. *See Powell v. American Motors Corp.,* 834 S.W.2d 184 (Mo. banc 1992).

Plaintiff states that Count VI is mislabeled "loss of consortium," but fails to make clear what other theory she is advancing. Therefore, defendant's Motion for Summary Judgment on Count VI of plaintiffs' Second Amended Complaint will be granted.

### Count VII—Slander

■ Mrs. Bosley asserts a claim against the school district for slander based on a call Superintendent Logerwell made to the Missouri Division of Family Services child abuse

"hot line." Second Amended Complaint at 14–15.

Defendant moves for summary judgment on the ground that persons making reports pursuant to R.S.Mo. § 210.115(1) are protected by immunity from civil suits under R.S.Mo. § 210.135. Def. Suggestions at 27. Plaintiff responds that Logerwell did not comply with the former statute, § 210.115(1), and, therefore, the district does not have immunity. Pl. Suggestions at 20. Plaintiff contends that Logerwell did not have reasonable cause to make the hot line call.

A claim similar to that asserted by Mrs. Bosley was made in *Voepel v. Cardinal Glennon Memorial Hospital,* 743 S.W.2d 600 (Mo. Ct.App.1988). In that case, the plaintiff failed to allege that the defendant knew or should have known that the report was false. Therefore, the court concluded that plaintiff had failed to state a cause of action. *Id.* at 601 (citing *Miller v. Ford Motor Co.,* 732 S.W.2d 564, 566 (Mo.Ct.App.1987)). Here, however, Mrs. Bosley has alleged malicious intent on the part of Logerwell as representative of the defendant. Pl. Second Amended Complaint at 15; Pl. Suggestions at 20–21.

Because defendant admits that Logerwell made a hot line report on October 13, 1993, (Defendant's Suggestions at 5), and because plaintiff alleges malicious intent, plaintiff has created a genuine dispute as to whether Logerwell had "reasonable cause" to make the report on October 13, 1993. Therefore, I cannot conclude, as a matter of law, that the immunity provided by § 210.135 applies.

■ Defendant moves for dismissal of Count VII because the Complaint did not set forth the defamatory language in *haec verba.* Def. Suggestions at 27. It is not, however, necessary in a case of slander to strictly follow the requirement that the defamatory language be expressly and explicitly stated. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 313 (Mo. banc 1993).

The reason [it is not necessary to state the exact language in a slander case] is obvious with a little reflection on the nature of each cause. Libel is usually published through easily reproducible means such as

a writing, printing, broadcast, or electronic communication. Thus, in a libel case it is not unreasonable to expect a verbatim reproduction of the offending statement to assist the court in determining whether it is capable of defamatory meaning. Slander, on the other hand, consists by definition of mere fleeting speech. The accuracy with which it is pleaded must depend upon the recollection of the original hearer, who might not even be the plaintiff. In such circumstances it is pointless to demand absolute precision. All that is required is that there "be certainty as to what is charged" as the slander.

*Id.* at 313.

In *Nazeri,* the plaintiff's petition set out some statements or portions of statements attributed to respondent in quotes; others were pleaded without quotation marks. The court "assume[d] that the phrases enclosed in quotes are purported to be reproduced verbatim, or at least closely paraphrased ... [and] assume[d] that the unadorned statements are more loosely paraphrased." *Id.* The court then held that "[a]s set forth in the petition, these statements adequately inform the respondents and the court of the substance of the utterances alleged to be defamatory. Therefore, we find that they are pleaded with enough particularity to state a claim for slander." *Id.* Similarly, another court found that in a case of slander the plaintiff must at least paraphrase the language complained of as defamatory. *Hester v. Barnett,* 723 S.W.2d 544, 556–57 (Mo.Ct. App.1987).

■ In the present case, there has been no attempt to even paraphrase what Logerwell supposedly said in his report to the Missouri Division of Family Services. Therefore, on its face, Count IV is inadequate and must be dismissed. Even if one were to assume that a motion for summary judgment is the correct way to challenge this pleading defect, plaintiff has failed to present any facts from which a reasonable jury could determine what Logerwell is alleged to have said. Therefore, Count VII will be dismissed.

### VII. *Conclusion*

Accordingly, it is ORDERED that:

1) the order dated October 4, 1995, is withdrawn and this order substituted for it;

2) plaintiffs' request for oral argument on the motion is denied;

3) defendant's Motion For Summary Judgment on plaintiffs' sexual harassment claim under 42 U.S.C. § 1983 (Count I) is granted;

4) defendant's Motion For Summary Judgment on Mrs. Jennifer Bosley's Title IX claim (Count II) is granted;

5) defendant's Motion for Summary Judgment on Jennifer Bosley's (a minor) Title IX claim (Count II) is denied;

6) defendant's Motion for Summary Judgment on plaintiffs' state law claims (Counts III through VI) is granted; and

7) defendant's Motion to Dismiss Count VII is granted.